Exhibit E

```
 1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF TEXAS
 2                     HOUSTON DIVISION

 3    _____
                                     )
 4    JAMES PHILLIPS, and ROBERT      )
      SAEMIAN,                        )
 5              Plaintiffs,           )
                                      ) CIVIL ACTION NO.
 6    VS.                             ) 4:18-CV-821
                                      )
 7    WIPRO, LIMITED,                 ) 10:20 A.M.
                Defendant.            )
 8    _____)

 9

                      DISCOVERY HEARING
10         BEFORE THE HONORABLE ALFRED H. BENNETT
                     AUGUST 16, 2019
11
      APPEARANCES:
12
      FOR PLAINTIFFS:
13    MR. DWAINE M. MASSEY
      Massey Law Firm PLLC
14    601 Sawyer Street, Suite 225
      Houston, Texas  77007
15    (713)223-1550

16    MR. MICHAEL JOHN VON KLEMPERER
      Kotchen & Low LLP
17    1745 Kalorama Road NW, Suite 101
      Washington, DC  20009
18    (202)471-1995

19    FOR DEFENDANT:
      MS. GRETCHEN AGENA
20    MR. JAMES BRADLEY SPALDING
      MR. KERRY E. NOTESTINE
21    MR. KEVIN STEPHEN LITTLE
      Littler Mendelson PC
22    1301 McKinney, Suite 1900
      Houston, Texas  77010
23    (713)951-9400

24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer.
```

1    APPEARANCES CONTINUED:

2    **COURT REPORTER:**
     Heather Alcaraz, CSR, FCRR, RMR
3    Official Court Reporter
     515 Rusk, Suite 8004
4    Houston, Texas  77002
     (713)250-5584

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **THE COURT:**  On Cause No. 4:18-CV-821, Counsel, your

2     appearances for the record.  First, from the plaintiff.

10:20:17  3          **MR. MASSEY:**  Your Honor, Dwaine Massey and

4     Mike von Klemperer for the plaintiffs.

10:20:27  5          **MS. AGENA:**  And, Your Honor, Gretchen Agena, Kerry

6     Notestine, Brad Spalding --

10:20:32  7          **THE COURT:**  Hold on.  Mr. Spalding -- was there a

8     third name you said.

10:20:40  9          **MS. AGENA:**  Notestine, Mr. Notestine.

10:20:42 10          **MR. NOTESTINE:**  I'm the attorney in charge,

11    Your Honor.

10:20:43 12          **THE COURT:**  Okay.  Mr. Notestine, yes.

10:20:44 13          **MS. AGENA:**  And Kevin Little.

10:20:50 14          **THE COURT:**  Very well.

10:20:50 15          Counsel, there are multiple motions that I hope to get

16    to the bottom of today regarding -- I see the motion for phased

17    discovery, which was Document No. 56.  There was a motion to

18    seal matter in support of their motion to compel, Document 73.

19    I am sure there are a few others, and so -- others that need

20    ruling you will bring to my attention.

10:21:42 21          So, Mr. Massey, you're going to be speaking to me, or

22    your co-counsel?

10:21:45 23          **MR. MASSEY:**  I'll be speaking to you, Your Honor.  May

24    I approach the podium?

10:21:47 25          **THE COURT:**  You may.

10:21:48  1          **MR. MASSEY:**  Thank you.

10:21:48  2          Your Honor, I think it's important to -- to keep in

3    mind the procedural posture of why we're here.  I understand

4    that there are other motions pending, but we're here to follow

5    up on your April 12th, 2019, ruling in this case, and that

6    ruling was very clear, very -- very unambiguous as to what the

7    parties were supposed to do, specifically what the defendants

8    were supposed to do by way of production of documents in this

9    case.

10:22:21 10         And so, really, there are four things.  First, the

11   procedural posture of this case, it's -- we're not here on a

12   motion to compel.  The Court's already ruled that certain

13   documents should be produced.  The Court was very specific in

14   that ruling.

10:22:32 15         So -- so -- the Court was specific as to the time

16   period for which documents were to be produced.  The Court was

17   specific as to what types of documents were to be produced.  The

18   Court was specific as to the location, the nerve center -- the

19   East Brunswick, New Jersey, nerve center, Wipro, from which the

20   documents should be primarily produced, although the Court was

21   clear in its ruling that the documents to be produced were

22   documents to be -- that could be accessible from that and given

23   today's technology.

10:23:05 24         Then the Court, again, was clear.  No party has raised

25   an objection or sought clarification of anything from that

1  April 12th hearing.  The parties have been allowed to review the

2  transcript from that hearing, and -- and at the end of the day,

3  Judge, I like -- I think it's important for us to look at -- to

4  see what the Court's ruling was, and there really hasn't been

5  any dispute about -- about what that's been.

10:23:34  6         So, Your Honor, may I pass these things out so the

7  Court will have something to look at?

10:23:39  8           **THE COURT:**  You may.

10:23:40  9           **MR. MASSEY:**  And the parties as well.

10:23:41  10         Can I get some assistance, Michael?  I think we'll

11  have five for the Court and...

10:24:11  12    *(Document handed to the Court.)*

10:24:13  13        **MR. MASSEY:**  So, Your Honor, you can see that -- and

14  we've gone through the transcript, as has defense counsel.  The

15  time period involved, the time frame was June 1st, 2014,

16  forward.  The geographic location was East Brunswick,

17  New Jersey, and the three plaintiff locations.

10:24:28  18         And you can see that the Court was very clear that it

19  was not interested in the parties playing word games about what

20  was to be produced because, as the Court was very clear on

21  April 12th, it would not take kindly upon a party suggesting

22  that the plaintiff did not meet their certification burden if it

23  hadn't been given the opportunity to conduct the discovery

24  necessary to make their case.

10:24:53  25        And so you'll see -- on this page, you'll also see

1    that the categories of documents and data that were to be

2    produced, and there are four big categories -- four big buckets,

3    Your Honor.  Data regarding applications, staffing, visas,

4    promotions and terminations; number two, affirmative action

5    plans, analyses, data, communications with people fluent.  The

6    Court will recall there was the issue of the subpoena of the

7    people fluent that the Court thought that we could pull back on

8    because we were under the impression that Wipro would make the

9    requisite production.

10:25:28  10    We also asked for business plans, policies, practices,

11    and other documents related to hiring, staffing, promotions,

12    terminations and visas, and complaints of discrimination.

10:25:37  13    So, Your Honor, that's the lay of the land.  That's

14    what we were -- that's the guidance that the Court gave us on

15    April 12th.  And so, you know, we've had several

16    meet-and-confers, and I don't think it's -- I'm not going to

17    take up the Court's time to go through that chronology, but, you

18    know, two weeks after -- just two instances.

10:25:57  19    Two weeks after, on April 29th, we visited.  We had a

20    meet-and-confer with defense counsel, and we were told that they

21    were formulating their position, which was of somewhat concern.

10:26:10  22    Later on in May, we were told that they would fully

23    comply, and that eased our concerns, and we were hopeful that

24    they would comply.  So we went -- awaited production, and we

25    were disappointed by the results of their production.  And,

1    Your Honor, there are various levels of disappointment that we

2    have, and I think it's important for the Court to see what those

3    are.

10:26:36  4        So what we've done, there's an appendix in our

5    July 22nd, 2019, letter, but we've also looked at the

6    information, the deficiencies in the production from another

7    aspect as well.  So that level -- that letter's available to the

8    Court.  That appendix is available to the Court.  We've also

9    summarized it in this document that I would like to pass out to

10   the Court as well.

10:27:04  11       *(Document handed to the Court.)*

10:27:25  12       **MR. MASSEY:**  So, Your Honor, what we've tried to do is

13   identify not only what -- what -- the kinds of documents that

14   were omitted from the production, but how that hurts us because

15   I think that's -- that's really the crux of the issue:  How does

16   the lack of production of certain documents ordered to be

17   produced by the Court hurt us in our ability to make the

18   certification case and carry our burden?

10:27:53  19       So we've gone down, Your Honor, the list of the

20   documents and electronic information ordered to be produced, and

21   we've provided notes, comments as to the deficiencies that we

22   observed in going through that production.  And to the far

23   right, you can see how we're hurt by that, how the lack of

24   production, the lack of compliance, how the deficiencies impede

25   and impair our ability to make the certification case and carry

1    our burden.

10:28:29  2           So, for example, if you look at the staffing data --

3    and so with respect to the staffing data, only five snapshots of

4    employee data listing employees' locations, job titles and job

5    levels on a single day for each year was produced, and that

6    precludes us from being able to determine which employees were

7    benched and then terminated, and the race and national origin of

8    those employees.  That's the kind of data -- kind of data sets

9    that we need in order to make the -- the pattern and practice

10   case before us, Your Honor.

10:29:07 11           Another example is that affirmative action analyses

12   near the bottom.  No company-wide affirmative action plans were

13   produced, only site-specific plans, Judge, that, you know -- and

14   the few nationwide data sets we looked at only included 300 of

15   Wipro's approximately 14,000 employees.  So, you know, it

16   appears that Wipro has withheld plans to prevent us from having

17   a complete set of these affirmative action plans, and this is

18   data that -- that Wipro is required to maintain and provide.

10:29:48 19           And, finally, Your Honor, the business plan on the

20   next page.  You know, no business plans were produced with

21   exception of 11 globalization PowerPoints that -- that -- that

22   only concern staffing, not promotions, not terminations.  And

23   so, I mean, those business plans are probably more likely to aid

24   the defense than the plaintiffs in this case.

10:30:13 25           So we're looking at -- again, the Court considered a

1    motion to compel.  The Court made a ruling.  The ruling was

2    clear.  No party has said, "We don't understand what the judge

3    is saying or what the judge is ordering."  Wipro, you know, in

4    May, after the April 12th hearing, said they'd fully comply.  We

5    get the production, and we see that they haven't fully complied.

10:30:37    6         Now, you know, that's -- that's a problem.  So -- but,

7    Your Honor, we have a solution, and what we want to do is to be

8    able to test that compliance.  And I know Wipro is going to tell

9    the Court -- they've stated it in writing.  They'll say it

10   today -- they produced 100- -- 130,000 pages of documents.

10:30:57   11         Well, that's a great number, but I submit to the Court

12   that that's irrelevant if the documents produced were deficient,

13   if there were gaps in those production, and if the documents

14   were so heavily redacted that we -- it contained no useful or

15   very limited use information.  So what we've proposed,

16   Your Honor, is to take a 30(b)(6) deposition where we test

17   Wipro's compliance.

10:31:23   18         And I know Wipro is opposed to that.  They've objected

19   to it, but, Your Honor, when the Court made a ruling on

20   April 12th, the ruling was clear, and Wipro finally said they'd

21   fully comply.  The only issue is whether the documents exist or

22   not.  At no point have I seen any document from Wipro saying,

23   "We fully complied with -- with Judge Bennett's April 12th,

24   2019, order."

10:31:51   25         What Wipro is saying is, Your Honor, let's revisit

1   this phased discovery issue again.  Let's -- let's take this one

2   step at a time.  Let the defendants do all of their discovery,

3   and then file any motion they want, and then the defendants --

4   and then the plaintiffs can have their turn.

10:32:13  5   Judge, you hit the nail on the head in the April 6th

6   hearing when you said to Mr. Spalding, "But it sounds like

7   you're in favor of defendants conducting discovery as to the

8   plaintiffs' claims on the plaintiffs' side, but that you're not

9   prepared to produce and/or have your witnesses deposed.  Am I

10  mishearing you?"

10:32:33  11  Mr. Spalding's response was, "No.  You're not

12  mishearing me."

10:32:39  13  So, Your Honor, what we want is the ability to -- to

14  get what you ordered be produced, to get it, to review it, and

15  to make our case to carry the burden that's before us.  The --

16  the objection to the 30(b)(6) deposition is one that falls on

17  deaf ears.  I mean, what the defendants have argued is that,

18  well, that's discovery about discovery.  Well, that's not what

19  the case law says, and as this Court knows, what's good for the

20  goose is good for the gander.

10:33:10  21  And the deposition of Mr. Phillips was taken, and some

22  of the same questions about what he did to conduct discovery

23  show that the concerns about the quality of the production are

24  valid concerns.  I mean, some of the questions Mr. Phillips was

25  asked:  (Reading) So this is a request for production of

1   documents.  Wipro's counsel asked for certain documents, and

2   then your lawyer made some responses, and I'm going to ask you a

3   few questions about this.

10:33:41  4        This is in the Phillips deposition transcript.

10:33:45  5        So we're not conducting -- seeking to conduct

6   discovery about discovery.  We're seeking to conduct discovery

7   about compliance with this Court's discovery order so we can see

8   the lay of the land, we can get the documents we need, we can

9   fill in the deficiencies we've observed, and we can make the

10  case we have to make.

10:34:04 11        **THE COURT:**  Thank you, Counselor.

10:34:09 12        **MS. AGENA:**  Good morning, Your Honor.

10:34:10 13        **THE COURT:**  Good morning.

10:34:12 14        **MS. AGENA:**  So I, obviously, want to start off by

15  addressing plaintiffs' argument that we have not complied with

16  the Court's order of April 12th, 2019.  Nothing could be further

17  from the truth.  What we did, in response to that instructions,

18  we did limit the time frame from June 1, 2014, forward, and --

19  which was pursuant to the Court's instructions at the hearing,

20  and then we did a monumental search for and processed, reviewed,

21  produced all of those documents on June 11th, as ordered by the

22  Court.

10:34:56 23        We produced in excess of 130,000 pages of documents

24  responsive to each and every one of the requests that were

25  brought up by plaintiffs at the April 12th hearing.  That

1    includes -- and we specifically went so far as to -- with

2    respect to the Court's comments at the hearing, we viewed those

3    instructions as broadly as possible.

10:35:28   4         So, initially, the Court limited the production to

5    four locations in the U.S.: Houston, where Plaintiff Saemian was

6    located, a location in Minneap- -- Minnesota and Oregon where

7    Plaintiff Phillips applied for positions, and those are the only

8    two named plaintiffs in this case.

10:35:49   9         The Court further instructed the production of

10   documents from East Brunswick, New Jersey, which is the U.S.

11   headquarters for Wipro.  After Mr. Kotchen continued to argue

12   that point, ultimately, the Court said he wanted us to produce

13   documents that were accessible from the New Jersey headquarters.

10:36:10  14         And so because of that, we did.  We took that to mean

15   not only documents physically located in New Jersey, but also

16   documents that could be requested from someone with authority in

17   New Jersey, including documents that came from spreadsheets that

18   were extracted from databases at Wipro's international

19   headquarters in Bangalore, India.  That is why there are so many

20   documents that were produced.

10:36:40  21         We produced all of the affirmative action reports for

22   the U.S. for this time frame even though, during this time,

23   Wipro wasn't even a government contractor that was required to

24   produce such affirmative action reports.  And I'd like to just

25   briefly go through their index.

10:37:00   1        They make the comment that -- with respect to staffing

2  data, that we only produced it as of five dates.  What we did

3  with that staffing data -- each one of those spreadsheets, if

4  you were to print them out, would amount to thousands of pages

5  because they contain all of the information about the employees

6  who were employed as of those dates.

10:37:25   7        Now, they're claiming, Well, that doesn't give us

8  enough information.  What they're neglecting to mention is that

9  we also produced a complete hiring -- a spreadsheet with

10  complete hiring information for all of Wipro's employees in the

11  U.S. during that -- the relevant time frame; another

12  spreadsheet -- complete promotions data for all Wipro employees

13  during that time frame; another spreadsheet for complete

14  terminations data for all Wipro U.S. employees during the time

15  frame; a visa database for all Wipro employees during that time

16  frame; the status of the visas.

10:38:03  17        Each of those spreadsheets, if you were to print them

18  out, would be thousands of pages of entries, and all of that was

19  produced to them in native format.  So they absolutely have the

20  information they need to pursue their claims in this case on a

21  class-wide basis.

10:38:23  22        The second thing that they argue is that we omitted

23  race -- race information.  We did not.  All of the information

24  that was produced in these databases, which are easily

25  searchable, you know, completely for them to be able to sort and

1    review and search, that information is coming from Wipro's SAP

2    database, and what it contains is -- as I'm sure the Court is

3    aware, and certainly plaintiffs' counsel should be aware, that

4    that is pursuant to voluntary EEO self-identification surveys.

10:39:04   5         So if an employee or applicant provided that

6    information, it was put into the database, but, of course, we

7    cannot force employees to provide that information.  And,

8    therefore, if they didn't, then that's not in the database, and,

9    of course, Your Honor knows that we can't produce information

10   that we don't have.

10:39:26   11        The other point I'd like to make is even if we did

12   have that data for every employee, which we don't because,

13   again, it's a voluntary self-identification survey, it still

14   wouldn't go to their claim because they're claiming we

15   discriminated against individuals who weren't of South Asian

16   origin or race or ethnicity.

10:39:47   17        Well, there's no category in the EEO-1 for

18   South Asian.  There's a category for Asian.  But even if we had

19   all of that information, which we do not because, again, it's

20   voluntary, that wouldn't take care of the issue of -- you know,

21   that they have information about who's South Asian or not

22   because it's not a category.

10:40:12   23        The other thing I want to point out is that, you know,

24   essentially, if we look at each one of these categories, all of

25   these documents have been produced.  Not only did we produce

1    those documents, but we also included that in our supplemental

2    responses.  We specifically told them the Bates name -- range

3    numbers of which documents are responsive to which request.

10:40:36  4        And now, all of a sudden -- and the first time they

5    ever mentioned any problem with our discovery was on July 16th

6    when we got the short little e-mail after Mr. Spalding had

7    already attempted to confer about the 30(b)(6) notice that was

8    served on July 1st.  So we made multiple attempts, Your Honor,

9    and they're outlined in my letter to the Court, to try and

10   resolve these issues with opposing counsel.

10:41:02 11        The response that we got each time we tried to have an

12   in-person or telephone conference was this:  When Mr. Spalding

13   first asked Mr. Kotchen, in person, the basis for the 30(b)(6)

14   notice, his response was simply, Well, I'm entitled to that

15   discovery, and refused to have any further discussion about it.

16   We got an e-mail two days later, basically said the same thing.

17   This is all in the attachments to our letter.

10:41:31 18        **THE COURT:**  Wait.  Before I go down that rabbit hole

19   as to the back-and-forth, which doesn't move the issue for me --

10:41:39 20        **MS. AGENA:**  Uh-huh.

10:41:40 21        **THE COURT:**  -- let me make sure I understand your

22   representations to the Court based upon the argument that

23   counsel provided.  Is your representation to me that from my

24   April the 12th order, that you -- by "you" I mean the defense --

25   has fully complied with my order?  Is that correct?

10:42:04 1      **MS. AGENA:**  We believe we have fully complied with the

2   order.  I will make a couple of notes that one issue is we're

3   hitting a moving target with respect to ongoing events.

10:42:18 4      So for the spreadsheets, we limited that to the period

5   from June 1 -- I'm sorry, June 1 of 2014 through May of 2018.

6   Because, obviously, Wipro is an ongoing business --

10:42:32 7      **THE COURT:**  I get that.  Okay.

10:42:33 8      But assuming that you had to put in a range --

10:42:38 9      **MS. AGENA:**  Uh-huh.

10:42:38 10     **THE COURT:**  -- of dates to request information, and

11  you're telling me now that you did that through the end of May

12  of '18 --

10:42:47 13     **MS. AGENA:**  Correct.

10:42:47 14     **THE COURT:**  -- assuming that date to be your end date

15  for your run request, you fully complied?

10:42:56 16     **MS. AGENA:**  Yes.  And -- and the only other thing I

17  would add, though, is with respect to EEOC charges, we've

18  recently become aware of a couple more that have been filed.

19  One that we just received -- that the client just received a

20  couple weeks ago.

10:43:10 21     So we will be supplementing our production as to a few

22  additional EEOC charges.

10:43:16 23     **THE COURT:**  So with those two caveats, you're in full

24  compliance?

10:43:21 25     **MS. AGENA:**  Yes, Your Honor.

10:43:21  1          **THE COURT:**  Which moves me -- well...

10:43:27  2          **MR. SPALDING:**  Your Honor, may I chime in --

10:43:34  3          **THE COURT:**  No.  Just a moment.

10:43:40  4          I'm not sure who -- I don't -- you know, from memory,

5    who has appeared before me either here, or when I was on the

6    other side of town on the state court bench.  But one of the

7    things that I've always stressed -- and I mean it -- is when

8    counsel stands up, looks me in the eye and makes a

9    representation to me as an officer of the Court, I take them at

10   their word until they give me a reason not to.  So that's why I

11   asked the question.

10:44:15  12         And I assume that you understand that when I asked you

13   whether or not you have fully complied, with the exception of

14   the two caveats about the run date and the additional

15   complaint -- EEOC complaints that you've received, that you have

16   fully complied with my order.

10:44:35  17         So did I understand you correctly?

10:44:37  18         **MS. AGENA:**  Yes, Your Honor.

10:44:38  19         **THE COURT:**  All right.  With that being said, counsel

20   mentioned a deposition to test that representation, and he

21   indicated that he was getting pushback from the defense on that.

22   And I would assume, based upon what Mr. Massey represented, he

23   was simply requesting a deposition to have someone from the

24   defendant, under oath, answer questions along the lines of, This

25   was ordered to be produced.  In regards to this particular

1    request, what was done to meet it?

10:45:31   2    What -- you know, I assume that would be the search --

3    and have all documents, in regards to that run request, been

4    produced?  And so I would assume that the answers would be, We

5    conducted a search consisting of one, two, three.  It produced

6    documents X, Y and Z, and all documents, X, Y and Z, have been

7    produced.

10:45:55   8    **MS. AGENA:**  Those are not their requests.  And if I

9    may approach, I have the list.

10:45:59  10    *(Document handed to the Court.)*

10:46:11  11    **MS. AGENA:**  One other caveat I should make,

12    Your Honor:  We obviously didn't produce any privileged

13    information, but we produced a privilege log.

10:46:18  14    **THE COURT:**  Understood.

10:46:26  15    Well, one of the things that counsel took pains to

16    point out to me was, I guess -- and I hadn't seen it, but I'm

17    just going off his representations to me -- that in

18    Mr. Phillips' deposition, questions were posed to him regarding

19    the completeness of his discovery responses, and that what he

20    intended to do -- plaintiff intended to do was to do likewise

21    with the defense response.  So --

10:46:53  22    **MS. AGENA:**  And I think if Your Honor looks at the

23    actual topics, which are listed at one, two, three -- four on

24    here, you will see that that -- their topics go far and away

25    beyond that.  For example, topic one says:  (Reading) Identify

1    and describe, by content, location and purpose, all Wipro

2    databases, Internet systems, servers, custodians and

3    documentary -- document repositories accessible from Wipro's

4    New Brunswick -- which was -- I'm sorry, should be

5    East Brunswick, New Jersey, location.

10:47:24   6          That is not limited, Your Honor, as to anything that's

7    relevant to our document production.  As you can see, it's --

8    it's so overbroad.  There's no restriction as to time, and

9    there's no restriction as to subject matter.

10:47:40  10          So really what they're asking for, to identify and

11   describe every single scrap of paper, every single computer,

12   every single server -- and, Your Honor, there was one other

13   document I'd like to provide, which is our supplemental answers

14   and objections to plaintiffs' first set of interrogatories.

10:48:26  15        *(Document handed to the Court.)*

10:48:27  16          **MS. AGENA:**  And, Your Honor, these were actually

17   served on March 15th of 2019.  So it was even before the

18   April 12th hearing.

10:48:33  19          But in this, they ask for identification of all the

20   servers and databases and so on and so forth, and if you skip

21   through a couple of pages, you will see a very detailed list of

22   servers and databases.

10:48:56  23          **THE COURT:**  All right.  So --

10:48:58  24          **MS. AGENA:**  So our position on this is that, you know,

25   to have to provide somebody to identify and describe everything

1    in -- that's even accessible from the U.S. headquarters is so

2    overbroad --

10:49:19    3          THE COURT:  Well, first things first.  I get that

4    point, but I'm trying to nail down another point.

10:49:24    5          MS. AGENA:  Right.

10:49:24    6          THE COURT:  And that is simply in regards to -- well,

7    let me ask in a more direct way.  Is the defense opposed to a

8    30(b)(6) deposition whose topics would be limited to how the

9    defendant complied, i.e., responded to the Court's April the

10   12th order?

10:49:59   11          MS. AGENA:  I think it would be rather difficult for

12   us to produce a witness without invading the attorney-client

13   work product privileges.

10:50:08   14          THE COURT:  Well, that's an issue that happens in all

15   depositions to where counsel's sitting there, and they're

16   instructed not to answer because of attorney-client privilege or

17   attorney work product.  What I'm getting at is -- I think

18   President Reagan said it best, "trust but verify."

10:50:30   19          And so to the extent that your representation needs to

20   be tested under oath by a representative of the defendant:  This

21   was the request that we received from counsel.  We went out.  We

22   conducted a search, and those documents have been turned over

23   and produced, and I can affirm under oath that that has

24   happened.

10:50:58   25          Simply limited on those means as to what the Court

1    ordered on April the 12th, if it is limited to that and that

2    only, what is the opposition from the defense?

10:51:13   3    **MS. AGENA:**  Because -- again, on the privilege issue,

4    as counsel for Wipro, we're the ones who had those

5    communications with in-house counsel for Wipro as to the efforts

6    that were taken.  I mean, I can represent to the Court what was

7    done.

10:51:31   8    **THE COURT:**  And I -- and I understand that, and I

9    appreciate that, and I think we've had that conversation --

10:51:38  10    **MS. AGENA:**  And one other point --

10:51:38  11    **THE COURT:**  -- how does -- but my -- my point is:  How

12    does counsel, who may not be as trusting as me -- how does

13    counsel confirm for not only his own peace of mind, but his

14    clients' peace of mind that all documents requested and ordered

15    to be produced from my April the 12th order have been produced?

16    What would you suggest?

10:52:05  17    **MS. AGENA:**  Well, I mean, obviously, again, we're

18    officers of the Court, Your Honor.  And I want to make one

19    point, which is the -- they've cited to a couple of cases.  Each

20    one of those cases were decided -- that they cited were decided

21    before the rule change in 20- -- in 2015 to Rule 26, and that

22    introduced, obviously, the balancing test.

10:52:31  23    We've cited to several cases from within the

24    Fifth Circuit -- none of their cases are -- but they're from

25    2018 that specifically note that discovery about discovery is

1   not permitted without some evidence that we haven't complied,

2   and there has been no evidence that we haven't complied.

10:52:53 3        THE COURT:  Well, let me --

10:52:54 4        MS. AGENA:  The other thing -- the other thing I would

5   add --

10:52:55 6        THE COURT:  Just one more moment, Counsel.  If

7   discovery about discovery is not allowed, if Mr. Massey's

8   representation is correct, when the plaintiffs' deposition was

9   taken, Mr. Phillips, did someone from the defense team pose

10  questions to Mr. Phillips about the completeness of his

11  discovery responses?  Did I mishear Mr. Massey, or did he

12  overplay that?

10:53:30 13       MS. AGENA:  I believe he overplayed that.  The

14  questions were simply Mr. Notestine going through his requests

15  for production to see if -- if there was anything else, and

16  that's not what they're asking for here.

10:53:43 17       THE COURT:  That's what I'm telling you is that if

18  it's limited to that --

10:53:47 19       MS. AGENA:  Uh-huh.

10:53:48 20       THE COURT:  -- you're still telling me you're opposed.

10:53:50 21       MS. AGENA:  Well, it's a little bit different when

22  you're talking about a 30(b)(6) depo as opposed to the

23  deposition of an individual because, obviously, that has to be a

24  corporate rep.  And given the volume of production -- I mean,

25  plaintiff produced fewer than, I believe, 5,000 pages.  We have

1    already produced -- I mean, when I said 130, that's just our

2    supplemental production, and we've supplemented since then, and

3    there was prior production of, you know, another 10,000

4    documents.

10:54:20  5    So when you're balancing those two interests, you're

6    obviously dealing with a much different issue to have somebody

7    testify as to every single one of those on the Wipro side.

10:54:34  8    The other thing I would suggest, Your Honor, is we

9    can -- you know, I mean, they've already served the

10    interrogatory as to our databases, right?  We can certainly

11    provide verification -- verified interrogatory responses as to

12    any other issues.

10:54:51  13    **THE COURT:**  All right.  Anything else, Counsel?

10:54:52  14    Hold on just a moment.

10:54:54  15    Anything else, Counselor?

10:54:58  16    **MS. AGENA:**  One second.

10:54:59  17    *(Sotto voce discussion between Ms. Agena and unidentified*

10:55:02  18    *individual.)*

10:55:13  19    **MS. AGENA:**  And, yes, Your Honor, so just one other

20    thing that I did want to mention.  Again, we produced all of

21    these documents pursuant to the Court's instructions on

22    June 11th.  We got the 30(b)(6) notice on July 1st.  I highly

23    doubt that there was a complete and thorough review of all of

24    our production.

10:55:35  25    They did not come back to us with any alleged

1    deficiencies until after we had repeatedly asked them to confer

2    on the 30(b)(6) issue.  They're not even trying to confer with

3    us on any alleged deficiencies.  That should be the starting

4    point.

10:55:54 5    And so if that is the issue, you know, we should be

6    able to meet and confer on, you know, resolving any alleged

7    deficiencies before we get to the step of a grossly

8    overburdensome 30(b)(6) deposition notice that, quite frankly --

9    I think it would be impossible to have certainly just one

10   witness testify as to everything that's out there that's not

11   each related to the lawsuit.

10:56:28 12   THE COURT:  Anything else, Counsel?

10:56:30 13   MS. AGENA:  At this point, unless we want to take up

14   the scheduling order, I think that covers the 30(b)(6) issue.

10:56:38 15   THE COURT:  Thank you, Counsel.

10:56:39 16   Counsel, did you have to weigh in on something --

10:56:42 17   MR. SPALDING:  Well, I don't think so.  I think she

18   covered it just fine, Your Honor.

10:56:46 19   THE COURT:  Thank you.

10:56:52 20   MR. MASSEY:  May I respond, Your Honor?

10:57:07 21   THE COURT:  Two things, Mr. Massey.  First and

22   foremost, I have counsel standing in front of me in a federal

23   district court telling me that she has fully complied with my

24   April the 12th order.  She gave me two caveats about an end date

25   and some supplementation regarding some additional complaints,

1   but other than that, the representation was that she's fully

2   complied.

10:57:38  3        I think counsel knows the weight of that

4   representation and what that means if it turns out it's not

5   correct.  That's point 1.  The last point that counsel made --

6   and I -- I apologize for the dates again.  Your date of

7   compliance of producing the documents you said was June what?

10:58:03  8        **MS. AGENA:**  June 11th.

10:58:04  9        **THE COURT:**  June 11th.

10:58:07 10        **MS. AGENA:**  The 60 days after the April 12th hearing.

10:58:10 11        **THE COURT:**  So -- and then she stated that the

12   deposition request came in on July --

10:58:18 13        **MS. AGENA:**  July 1st.

10:58:18 14        **THE COURT:**  -- on July the 1st.  So a little bit over

15   a half a month after, and she said this June 11th response

16   consisted of, even by your representation, over 130,000

17   documents.  Which suggests that for you to determine that you

18   needed to test whether or not it had been fully complied with,

19   that in between June the 11th and July the 1st, you had

20   undertaken to review the 130,000 documents -- 130,000-plus

21   documents and reached a determination that things were missing

22   and, i.e., the production was not complete.

10:59:10 23        So those were the two things that stuck out in her

24   representations and argument to me.  With those -- with that

25   being said, I'll allow you to respond.

10:59:21  1          **MR. MASSEY:**  Thank you, Your Honor.  The first thing,

2    Your Honor, is that until today, I had never heard Wipro say, We

3    fully complied.  So that's news to us.  And I appreciate counsel

4    saying that, but all of us have represented large, multinational

5    entities with multiple locations, and we understand that our --

6    we make requests of our client.  Our client takes those

7    requests -- and we have in-house counsel.  In-house counsel

8    takes those requests.  In-house counsel goes and talks to people

9    on the ground.

10:59:52 10          And so the -- the issue is whether there's full

11   compliance not from these lawyers, but from their client.  And

12   so I don't want anyone to leave the impression that we're saying

13   these lawyers have done anything wrong with respect to the

14   production in this case.

11:00:09 15          **THE COURT:**  I didn't take it as that.

11:00:11 16          **MR. MASSEY:**  Okay.  I want to make sure the record is

17   clear.

11:00:13 18          **THE COURT:**  I didn't take it as that.

11:00:14 19          **MR. MASSEY:**  But I do believe, Your Honor, that --

20   that, you know, we've had our clients -- even when it comes to

21   our client, it's good to trust but verify when it comes to

22   something like this.

11:00:23 23          And so with respect to counsel's representations to

24   the Court, I appreciate that.  But with respect to the document

25   review, that window, I can tell you I didn't go through 130,000

1    pages of documents, but it's my understanding that my co-counsel

2    did.

11:00:41  3         I looked at a few things.  I looked and I saw that --

4    that pages of reports were so heavily redacted, we couldn't tell

5    the name of the individual, where they worked, and there were

6    things like that.  So there were pages of documents that were

7    produced, but the utility of those pages was zero because the --

8    the responsive information, which defense thought was

9    nonresponsive, is the kind of information we need to pull

10   together to create the data that we needed to test and make our

11   case.

11:01:15  12        So I will let Mr. von Klemperer talk as to that

13   window, that June 11 to July 1st window, but I would just like

14   to put a comma there and talk about the breadth of the 30(b)(6)

15   notice we proposed.  And -- and could it have been more artfully

16   worded?  I mean, obviously.  There was a typo as to

17   New Brunswick.

11:01:38  18        But the point of it is when we got to that point, when

19   we got -- before that was issued, it was to try to get some

20   resolution on getting compliance with this Court's April 12th

21   order.  Counsel has talked much about meet and confer.  Well,

22   we've done that before we got here on April 12th, and

23   April 12th, there was an order.

11:01:59  24        Counsel's referred to it as the Court's instructions.

25   They weren't instructions.  They were orders.  They were orders

1   for Wipro to produce certain categories of documents from a

2   certain period of time from a certain location and other

3   locations that could be accessed from that location.  It's our

4   position, to this day, that that has not been done, and we're

5   not saying counsel didn't do it.  We're saying their client

6   didn't do it.

7         **THE COURT:**  What basis do you have to suggest that it

8   has not been done?

9         **MR. MASSEY:**  Well, when we look at what we do have --

10  we have a sampling of what we do have, and based on other cases

11  of what we should expect.

12        For example, the -- the staffing data on the document

13  we provided, well, race is missing from 50 percent of those

14  records.

15        **THE COURT:**  Counsel made the point that that was a

16  voluntary response and that it was not a mandatory item that

17  would be present.  So maybe that explains why it's missing.

18        **MR. MASSEY:**  Okay.  Well, that -- I mean, that's not

19  the only deficiency we see.  Now, maybe -- maybe some of the

20  deficiencies cannot be cured, cannot be corrected and data

21  doesn't exist --

22        **THE COURT:**  Counsel, have a seat.

23        **MR. MASSEY:**  But, you know, the no company-wide

24  affirmative action plans, I mean, why -- why wouldn't they have

25  company-wide -- what about the business plans -- the

11:02:20
11:02:24
11:02:32
11:02:42
11:02:54
11:03:03
11:03:05

1  company-wide business plans?  Even when -- counsel referred to

2  their privilege log.  Well, the privilege log does have

3  communication between counsel -- outside counsel and in-house

4  counsel, but then the back of it has references to communication

5  with the EEOC.  How are those privileged?

11:03:36  6      At this Court's hearing on April 12th, you left open

7  the possibility of documents being produced *in camera* concerning

8  investigations, and what counsel's done is talked about not

9  limited to employment investigations, but not visa

10  investigations, and we believe all that's on the table.  All

11  that's part of the Court's order of April 12th, 2019.

11:04:00  12      So I'd like to have Mr. von Klemperer talk about what

13  was done with respect to reviewing the production from June 11th

14  two July 1st before the 30(b)(6) was generated, Your Honor.

11:04:14  15      **THE COURT:**  Hold on just a moment.

11:04:15  16      And maybe I'm misunderstanding you, Mr. Massey, and

17  I'm going to try to get a better understanding.

11:04:31  18      **MR. MASSEY:**  Sure.

11:04:31  19      **THE COURT:**  In regards to the 30- -- what you've

20  called the 30(b)(6) of July the 1st, you stood up, in your

21  initial remarks to the Court, and stated that -- the phrase you

22  used, good for the goose, good for the gander, it wasn't

23  discovery about discovery.  It was a request to confirm that the

24  production ordered by this Court on April the 12th had been

25  fully done.  Did I understand that correctly?

11:05:01  1          **MR. MASSEY:**  That's correct, Your Honor.

11:05:02  2          **THE COURT:**  Okay.  So, obviously, the -- if what

3     counsel handed up to me, the 30(b)(6) document talked --

4     deposition topics, that's a little bit different from -- I don't

5     have the transcript from the April 12th hearing memorized, but

6     what you handed up to me, the very first thing where I am

7     speaking, and I'm speaking my orders, these are quite different.

11:05:42  8          So it seems to me that, if the intent of the 30(b)(6)

9     deposition notice was to confirm compliance with my orders, that

10    the topics would have tracked the language from my speaking

11    order as opposed to what appears to be a more broad deposition

12    request, slash, interrogatory.

11:06:07 13          **MR. MASSEY:**  Your Honor, I -- I agree --

11:06:08 14          **THE COURT:**  Okay.

11:06:08 15          **MR. MASSEY:**  -- and what I would do with topic one is

16    put comma, rather period, pursuant to the Court's order of

17    April 12th, 2019.  And -- and, really, the topic, the -- the

18    crux of the driver of this proposed deposition is topic two

19    where it says:  (Reading) Identify and describe all efforts by

20    Wipro to search for, collect and produce documents and ESI

21    responsive to plaintiffs' discovery requests pursuant to the

22    Court's instructions -- and I would change it -- April 12th,

23    2019, order.

11:06:40 24          **THE COURT:**  The other point that counsel makes

25    along -- I think that's helps clarify the issue.

11:06:47  1        The other point that counsel makes is that in -- and,

2    Counsel, please correct me if I'm overstating what you said.

11:06:57  3        But that counsel said that in complying with my orders

4    of April the 12th, there were multiple people involved, and it

5    would be extremely difficult to seat one person who would be

6    able to respond to each and every effort that was undertaken to

7    comply with my April the 12th order.

11:07:23  8        So if that is correct, and I have no reason to believe

9    that it -- that it isn't, you're not talking about a single

10   person taking a seat for a deposition.  You're talking about

11   multiple people.  And even just from the face of it, there were

12   multiple locations, there were multiple topics, perhaps

13   requiring the involvement of different departments at the

14   defendant.  So that makes perfect sense to me.

11:07:54 15        So how do you rectify putting a single person in a

16   seat to do this?

11:08:01 17        **MR. MASSEY:**  Well, Your Honor, we didn't suggest that

18   it's necessarily one person, but we do think it's a manageable

19   number.  Just as the equivalent in state court Rule 199 when

20   you're deposing the designated representative of an

21   organization, that can be multiple people to speak on topics.

22   What we tried to do is put as few topics as possible.

11:08:23 23        There are only four and, really, the main topic is

24   two.  And so we're trying to narrow the topic:  What was done?

11:08:31 25        **THE COURT:**  Okay.  This is what we're going to do -- a

1    closing thought?

11:08:41  2         **MR. MASSEY:**  From counsel, we also need to know what

3    else exists.

11:08:46  4         **THE COURT:**  This is what we're going to do:  You're

5    going -- you're hereby ordered, in the next two weeks, to meet

6    and confer in person, with coffee and donuts or bagels, whatever

7    you like, because you're going to be there a while, and you're

8    going to go through my April the 12th order.

11:09:10  9         Mr. Massey, for each of my orders that I ordered on

10   April the 12th, you're going to come, in hand, with specific

11   deficits, something that you can point out was not produced that

12   should have been produced, what you were expecting to be

13   produced --

11:09:32  14        **MR. MASSEY:**  Yes, Your Honor.

11:09:32  15        **THE COURT:**  -- and was not produced.

11:09:36  16        Once you have that list in hand, Counsel, if you're

17   able to respond immediately, do so at the coffee meet-and-greet.

18   If you're not able to immediately respond because you have to

19   touch base with someone, you'll have three business days after

20   the meet-and-greet to respond in writing.  Understood?

11:10:02  21        **MS. AGENA:**  Yes, Your Honor.

11:10:02  22        **THE COURT:**  Mr. Massey, understood?

11:10:05  23        **MR. MASSEY:**  Understood, Your Honor.

11:10:06  24        **THE COURT:**  Okay.  The second thing that we're going

25   to do at this -- well, it's not necessarily for you, Mr. Massey,

1    but, counsel, looking at No. 2 of your handout to me:    (Reading)

2    Identify and describe all efforts taken by Wipro to search for,

3    collect and produce documents and ESI responsive to plaintiffs'

4    discovery request pursuant to the Court's orders at the April

5    12th hearing.

11:10:38  6         You mentioned that you would be -- you've already made

7    a representation to me as an officer of the Court, which I take

8    at face value.  You also mentioned that you would be willing to

9    have a verified response.  So I want you to talk to whom you

10   need to talk to, to produce a verification, if it's from one

11   person or more, that explains exactly the response to item

12   No. 2.

11:11:08 13        Based upon that verification or affidavit, the Court

14   will make a determination as to whether or not a deposition

15   should take place in regards to the follow-up for that

16   affidavit.

11:11:22 17        So the more detailed that the affidavit or

18   verification is, the less likely there may be the need for a --

19   a deposition.

11:11:33 20        But that will put in counsel's hand at least a

21   description of what was done.  That gives you, also, the

22   opportunity to monitor the response for any attorney-client

23   privilege or attorney work product.

11:11:49 24        Counsel, once you have that in hand, if you take issue

25   with it, send it up to me.  I'll take a look at it, and I'll

1    make a determination if it's appropriate to proceed with a

2    deposition.

11:12:01  3         MS. AGENA:  One clarification on the verification --

11:12:04  4         THE COURT:  And I said "verification."  I'll -- let's

5    call it affidavit as to what was done by way of -- of collecting

6    the data that was responsive to my orders of April the 12th.

11:12:18  7         MS. AGENA:  And are you asking for that from a Wipro

8    employee, or counsel?

11:12:24  9         THE COURT:  I believe it should be from a Wipro

10   employee because you didn't conduct the search, and so this

11   person -- it would be no different from, like, a custodian of

12   records type of affidavit.  This was the request.  This is what

13   I undertook to go and get the information, and I produced said

14   information.

11:12:46 15         MS. AGENA:  The only difficulty with that -- well,

16   couple of difficulties.  One is our client's legal team in

17   India, quite frankly, did a lot of this gathering of

18   information.  So that's --

11:13:05 19         THE COURT:  So the affidavit may be from a counsel?

11:13:08 20         MS. AGENA:  Yes.

11:13:08 21         THE COURT:  Okay.  Well, let's --

11:13:09 22         MS. AGENA:  And that's a little bit concerning for me.

11:13:11 23         THE COURT:  Well, first things first.  Let's see what

24   you can produce, and then, if it turns out that there are other

25   issues with it, I'll take that up.  Because it may very well be

1    that you're able to address this in a manner in which you're

2    comfortable with and which satisfies counsel, but, ultimately,

3    satisfies me that you undertook all necessary searches, and you

4    produced all responsive documents based upon -- in addition to

5    your representation.

11:13:40  6         **MS. AGENA:**  And, again, my also -- my other concern is

7    that I don't think we could have just one person --

11:13:45  8         **THE COURT:**  That's fine.

11:13:46  9         **MS. AGENA:**  -- because there's multiple --

11:13:47  10        **THE COURT:**  I understand.

11:13:48  11        **MS. AGENA:**  -- RFPs that we responded to.

11:13:51  12        **THE COURT:**  I understood that perfectly well.  So it

13   may be multiple affidavits, multiple verifications as to what

14   was done in response to my orders, and I -- I have no issue with

15   that.

11:14:01  16        **MS. AGENA:**  Okay.  And one other thing, Your Honor.

17   You set two weeks.  That's fine except for there's Labor Day

18   holiday coming up.  So could we do three?

11:14:10  19        **THE COURT:**  You may.

11:14:11  20        **MS. AGENA:**  Thank you, Your Honor.

11:14:12  21        **THE COURT:**  That's fine.  So three weeks from today,

22   you can pick an office, but it's going to be in person across a

23   conference table.  And again, Mr. Massey, the plaintiffs' team,

24   they're going to walk into that meet-and-greet with a specific

25   list of what has been deficient in your response.

11:14:42  1              **MS. AGENA:**  Allegedly been deficient.

11:14:44  2              **THE COURT:**  Allegedly been deficient.  So -- very

       3  well.

11:14:46  4              He's going to hand that to you, and if you can

       5  respond -- walk through the list while you're sitting at the

       6  table.  If you're able to offer an immediate response, you will

       7  offer an immediate response.  If it turns out that you need to

       8  go and talk with someone, confer with someone, you'll have three

       9  business days after that to actually provide a written response

      10  to Mr. Massey.

11:15:09 11             Then Mr. Massey will know -- first of all, you will

      12  know what Mr. Massey and the plaintiffs' team has deemed

      13  deficient.  You will have a response to Mr. Massey either

      14  immediately or third -- within three business days.

11:15:30 15             **MS. AGENA:**  Your Honor, if I may make a suggestion, it

      16  might be a more productive conference if we could actually get

      17  the list three days before we have the conference, and then we

      18  would be in a position to actually discuss it there.

11:15:43 19             **THE COURT:**  Absolutely.  If -- do you have any

      20  objection to that, Mr. Massey?

11:15:46 21             **MR. MASSEY:**  I don't, Your Honor.

11:15:47 22             **THE COURT:**  Okay.  So if -- let's just use what we

      23  have.  Let's say the meeting takes place on a Friday.  Then

      24  he'll give it to you by noon on Wednesday.

11:16:00 25             **MS. AGENA:**  Thank you, Your Honor.

11:16:00  1          **THE COURT:**  Okay.  So you'll know what's going on.

11:16:02  2          Then based upon that, meet and confer, and your

3  verifications, affidavits or whatever -- Mr. Massey will be in a

4  position to make another argument or, more importantly, I will

5  be in the position to say, I'm satisfied, based upon counsel's

6  response to what you claim to be deficient and these

7  verifications, that my order has been complied with, and then we

8  can move on to the next phase.

11:16:35  9          So I'm not sure how I'm going to come out on that.  It

10  may be that Mr. Massey's satisfied, and that ends it.  It may be

11  that Mr. Massey's not satisfied.  I'll take a look at it, and

12  then I'm satisfied, and I'll tell you that I'm satisfied, and

13  we'll move on to the next phase.  Or, if there are deficiencies

14  that I think still exist, I'll tell you what those are, and I'll

15  make appropriate orders thereafter.  I think that that's

16  probably the best way to -- to deal with it.

11:17:04 17          *(Sotto voce discussion between the Court and case manager.)*

11:17:16 18          **THE COURT:**  All right.

11:17:17 19          **MS. AGENA:**  Your Honor, we also currently, I think,

20  have on the docket a hearing for next Friday, which was actually

21  the -- August 23rd.  It was actually set at the April 12th

22  hearing as a follow-up.  I assume this --

11:17:31 23          **THE COURT:**  Yes.  This takes care.

11:17:32 24          **MS. AGENA:**  -- takes the place of that, but we do

25  still have the issue of a scheduling order has not been entered

1    in this case.

11:17:37   2         THE COURT:  And that's what Ms. Edwards just handed up

3    to me.  I think, on what you suggested, was a -- what's the

4    correct date?

11:17:48   5         THE CASE MANAGER:  I provided the correct dates.  They

6    gave Saturday dates, and so it --

11:17:52   7         THE COURT:  Okay.  On your dates you provided, I

8    guess, a weekend date.  And so we made it March 5th, 2021, for

9    your docket call, and March 8th, 2021, for the trial date.  So

10    with those corrections, we'll get the scheduling order entered.

11:18:11   11         MR. MASSEY:  Your Honor, one question about the

12    scheduling order.  Is this the proposed scheduling order with

13    the phases -- the phased discovery?

11:18:22   14         THE COURT:  Show me what you're looking at because

15    I'm --

11:18:26   16         MR. SPALDING:  We handed you a copy of it at the

17    outset of the hearing, Your Honor.

11:18:29   18         THE COURT:  Oh, let me see here.

11:18:29   19         MR. SPALDING:  I can explain to you our thought

20    process there.

11:18:34   21         THE COURT:  Yes.  All right.

11:18:35   22         MR. SPALDING:  Your Honor, this -- this proposed

23    scheduling order that we've given you today and was actually

24    attached to our supplemental briefing we filed a couple of days

25    ago actually mirrors the Court's draft proposed scheduling order

1    that you-all handed to us on April 12th at the hearing that,

2    ultimately, was abandoned during the course of that day and put

3    off.

11:18:58  4       It mirrors that draft scheduling order except for one

5    initial phase that we have added to occur this year before the

6    end of the year, and I would best describe that phase as a

7    summary judgment phase.  And the reason we're asking for this,

8    Your Honor, stems back to the original Rule 26 proportionality

9    argument we made back in April when we first took a run at you

10   on this phased discovery process.

11:19:25  11      So I want to expand on that just a little bit,

12   Your Honor.

11:19:28  13      So what happened in that April 12th hearing, as the

14   Court remembers, is the Court ordered us to produce this range

15   of discovery that we've been discussing this morning.  We did

16   that.  It took us 60 days to do it and several hundred thousand

17   dollars to accomplish this task.  It was a monumental task,

18   Your Honor, and, frankly, was not something we were hoping for

19   coming out of that April hearing, but it was what we have, and

20   we did it.

11:19:54  21      The argument we made back in April was, Your Honor,

22   the claims of the individual named plaintiffs in this case are

23   so weak, that to require us to undertake this burden at this

24   time is out of proportion according to Rule 26, so let us focus

25   on the plaintiffs first.

11:20:10   1          You put that aside in April, but I want to discuss it

  2   again today in the context of this proposed order because what

  3   has happened since that April hearing is we are -- we're on the

  4   hook for several hundred thousand dollars of this discovery that

  5   was exceedingly broad.  They now have that.  And we're going to

  6   have this meeting in three weeks to discuss what they have, but

  7   they have a lot now.

11:20:32   8          They have enough to give to their expert; enough to do

  9   their analysis.  Now, they may need more at some point, and

 10   that's fine, but the other thing that has happened since April

 11   is we took the two individual plaintiffs' depositions and

 12   confirmed what we suggested in April, which is that there is --

 13   these are summary judgment claims, Your Honor.

11:20:52  14          There is no legitimate evidence to support their

 15   individual claims, and so what we would like to do is get

 16   motions for summary judgment on file by December -- or, sorry,

 17   by January, you know, and the -- if -- if we do that, and if

 18   we're right, that could potentially end this case, which is good

 19   for the Court.  It's good for us.  It's not good for the

 20   plaintiffs, but it -- it is -- if it's -- if that's on the

 21   merits, if that's what needs to happen, that's fine.  But we're

 22   on the hook for hundreds of thousands of additional dollars if

 23   we don't.

11:21:27  24          Now, you may ask, Judge, why not just file a motion

 25   for summary judgment now.

11:21:32  1          **THE COURT:**  Yes.

11:21:33  2          **MR. SPALDING:**  Okay.  The reason we built in this

3    extra five-month period -- I think in our order we've got a

4    proposed discovery deadline for that initial phase in December,

5    and then the -- the date in January to file the motions.  The

6    only reason we did that, Judge, is because we assumed that if we

7    were to file the motions for summary judgment on September 15th,

8    for example, that the plaintiffs would stand up and say,

9    Your Honor, we need to do discovery to defeat these motions.

10   And then we've got those motions sitting there while they do

11   four months of discovery with those motions as a target.  So we

12   just built in this phase to conduct this discovery.

11:22:08 13          We are -- we've taken the depositions of the

14   plaintiffs.  We're perfectly happy to make available depositions

15   on the merits of the people they need to depose to try to defeat

16   summary judgment, but we think it's appropriate, under Rule 26,

17   for us to get this done by December and January before we,

18   again, pick up this massive, broad discovery that would be

19   necessary if the plaintiffs had good claims.

11:22:35 20          So that's where we're -- that's what our thought

21   process is on this, Judge.

11:22:39 22          **THE COURT:**  I appreciate that.

11:22:40 23          **MR. MASSEY:**  Your Honor, I'll briefly respond, and

24   I'll turn it over to Mr. von Klemperer.  But I'll remind the

25   Court what the Court said, and the Court was very prophetic in

1   what it said on April 12th.  It says:  (Reading) Because, no, I

2   would look very unkindly on a party saying --

11:22:52  3          THE REPORTER:  I'm sorry.  I'm sorry.  Can you repeat

4   that?

11:22:52  5          MR. MASSEY:  Sure.

11:22:55  6          THE COURT:  Pull your mic closer to you, Mr. Massey.

11:22:57  7          MR. MASSEY:  Your Honor, I'll remind you what you

8   said.  It was very prophetic on April 12th, 2019.  You said:

9   (Reading) Because, no, I would look very unkindly on a party

10   standing in front of me making argument about limiting

11   discovery, and then showing up for class certification argument

12   making an argument about what plaintiff does not have by way of

13   discovery to prove its case.

11:23:20 14          So what the defendants are now doing in the hearing

15   that we've consumed a great deal of time talking about what we

16   perceive are deficiencies in their production, are saying that

17   the plaintiffs -- that they produced enough that they want to --

18   to limit discovery and move for summary judgment.

11:23:39 19          THE COURT:  No.  I didn't -- I didn't hear that.  I

20   heard the opposite, actually, which I was surprised by.  I heard

21   counsel say that, first thing we're going to do, is tie off this

22   issue of what I did by April 12th, my order.  We're going to get

23   that out of the way.  Counsel then said that he built in this

24   period for whatever merit-based discovery that plaintiffs would

25   need to address any potential motion for summary judgment.

11:24:15 1          So in counsel's remarks to me, he anticipates that

2    you're going to need certain discovery to potentially defeat a

3    motion for summary judgment, and that they were willing, by way

4    of deposition, whatever the case may be, to allow time for that.

5    If I -- did I understand you correctly?

11:24:38 6          **MR. SPALDING:**  That's correctly right, Your Honor.

11:24:40 7          **THE COURT:**  Okay.  So he -- I didn't here limited

8    discovery.  I heard merit-based discovery, and I was surprised

9    to hear it from him, but that's what he said.

11:24:48 10         **MR. MASSEY:**  Well, Your Honor, I'll cede to

11   Mr. von Klemperer in just a second, but what I understand -- or

12   what I understood is that, you know, the -- the defendants want

13   to give us time to conduct discovery, including deposition

14   discovery.  The problem with that is we've got to get this

15   written discovery, we've got to get that under control --

11:25:06 16         **THE COURT:**  No, first things first.  And so what I

17   anticipate is you're going to tie off -- we're going to finish

18   this issue of any alleged deficiencies with the April 12th

19   order.  That will be done.  Then, at that point in time, I would

20   anticipate you now know that they consider this a summary

21   judgment case.  Whatever discovery that you would potentially

22   need to put in a response to such a motion, I will give you

23   permission to move forward with.

11:25:43 24         I'm going to try to keep close hands on this case

25   through the end of the year, and so if the two of you cannot

1   agree as to a deposition or whatever other discovery you deem

2   that you need, come see me.  I'll listen and, based upon what

3   their potential argument is against this, knowing that I'm going

4   to have a motion for summary judgment coming down the pike, I --

5   I'm going to allow you to do that.

11:26:17  6        So I can tell you -- and I've told everyone this from

7   the day that I've took a bench.  I look -- I have no problem

8   closing the courthouse door on a claim, but I do not look kindly

9   on doing that until such time the other side has had their

10  opportunity to fully vet and discover their claims such that

11  they can respond to that request.

11:26:42  12       And so I'm not going to put you in a position of

13  responding to a motion -- a dispositive motion without giving

14  you the time to conduct the necessary discovery for the response

15  to that motion.

11:26:57  16       **MR. MASSEY:**  I appreciate that, Your Honor.  And

17  Mr. von Klemperer had something to say specifically about the

18  order.

11:27:01  19       **THE COURT:**  All right.

11:27:03  20       **MR. VON KLEMPERER:**  Your Honor, you may recall that

21  the defendants filed a motion for what they called "phased

22  discovery" --

11:27:10  23       **THE COURT:**  Yeah.

11:27:10  24       **MR. VON KLEMPERER:**  -- and we responded to that.  Our

25  response is Document 68.  We spent about 20 pages briefing why

1    what they're proposing is foreclosed by Supreme Court and

2    Fifth Circuit precedent.

11:27:22  3         They wanted to limit discovery to just the

4    individual -- the claims of the individual named plaintiffs and

5    leave the pattern or practice discussion to later in the case.

6    The Fifth Circuit has held very clearly that you cannot do that.

7    You must focus on the class liability first before you move to

8    the individual plaintiffs.

11:27:45  9         And the reason for that is that this is a Teamsters

10   case which looks, first, to whether there's a pattern or

11   practice of discrimination.  And if the plaintiffs can prove

12   that first phase, then there's a second subsequent phase where

13   each individual class member and named plaintiff is entitled to

14   a presumption of -- that they were discriminated against, and so

15   the burden is actually on the defendant to disprove that.

11:28:12 16         And so we address that point very extensively in our

17   opposition to their motion, which is Docket 68.  We responded

18   again a couple of days ago to their recent filing.  That is

19   Docket 87.  And I would just urge the Court to review that case

20   law.  It's Footnote 2 of our recent filing, 87.  Their proposal

21   is not permitted.

11:28:36 22         **THE COURT:**  I appreciate that, and I think you're

23   getting a little bit ahead of yourself because I'm not prepared

24   to order any phased discovery at this point.

11:28:44 25         **MR. VON KLEMPERER:**  Okay.

11:28:45  1    **THE COURT:**  Again, this is my kind of game plan moving

2   forward:  First things first.  Let's finish the issue of any

3   alleged deficiencies with the April 12th order.  You're going to

4   take care of that within the next three and a half, four weeks.

11:29:03  5    Once that is done -- well, it may not be four weeks

6   because after you meet and confer, if you deem that there are

7   some deficiencies still, and you need to bring that to my

8   attention, I'll look at the alleged -- not alleged.  I'll look

9   at the verifications, the affidavits as to what has been done,

10  and then I can make a determination.

11:29:28 11    First, we've completed what I've ordered from April

12  the 12th.  Let's move to the next phase.  That next phase is

13  going to be, I would assume -- counsel has indicated there's

14  going to be a motion for summary judgment.  I'm going to allow

15  any discovery that will put you in a position -- I do know that.

11:29:46 16    As to discovery regarding class certification, that

17  coming -- that's a discussion that we're going to have a little

18  bit further down the road, and I'm not precluding it or even

19  ruling on that right now or ordering it one way or the other.  I

20  anticipate we're going to be meeting probably in early October,

21  at the latest, to see what our next steps are.  Maybe we'll --

22  we -- before the end of September, but I -- it'll probably be

23  early October, to make sure all of the items that I've ordered

24  from April the 12th have been done, and then we'll move to the

25  next phase.

11:30:29  1          At that hearing or our next gathering, we can talk

2    about this very argument that you're making.  The one thing I do

3    want to do, though, by way of -- I would like to say that we're

4    going to get this case tried in early 2021, and so that's going

5    to -- if we get that far.  That's going to kind of be how we're

6    moving.

11:30:57  7          So as I consider discovery that is necessary, it will

8    be with that in -- that potential trial date in mind sometime in

9    early 2021.

11:31:11 10          **MR. VON KLEMPERER:**  Thank you, Your Honor.

11:31:12 11          **THE COURT:**  Does that make sense to you?

11:31:13 12          **MR. VON KLEMPERER:**  It does.  And we would just ask

13   that the Court defer entering the scheduling order --

11:31:18 14          **THE COURT:**  I'm not going to enter it now.

11:31:20 15          **MR. VON KLEMPERER:**  Okay.

11:31:20 16          **THE COURT:**  Yeah, because it has this phased discovery

17   issue.  One of the things that I want to, again, tie off is this

18   April the 12th order from the Court.  We're going to have

19   another, again, hearing by the end of September/early October,

20   and I think it would be more appropriate then because if I find

21   that you hadn't -- if I find that you hadn't complied, and I

22   order additional steps to be taken, then that will throw off

23   what, potentially, you've suggested here.

11:31:54 24          **MR. SPALDING:**  And as I -- as you consider this phased

25   discovery issue, Judge, I just want to point out

 1   Mr. von Klemperer is citing cases that all predate the 2015

 2   amendments to the Federal Rules of Civil Procedure, most

 3   specifically Rule 26.  And Rule 26D specifically gives the Court

 4   the ability to enter phased -- a phased discovery order in cases

 5   like this, all related to the proportionality of -- of discovery

 6   in the case.

11:32:21  7        **THE COURT:**  We're going to -- I know for the next few

 8   months I'm going to keep tight reins on you because I want to,

 9   again, make sure that this April portion is fully complied with.

10   As you've brought it to my attention, I want to make sure any

11   alleged deficiencies are remedied before we move on.

11:32:40 12        And so, Ms. Edwards --

11:32:45 13        **THE CASE MANAGER:**  Yes, sir?

11:32:45 14        **THE COURT:**  -- do you have a potential date?  Let's

15   see.  Let me -- I'll -- that will probably be most helpful.  Let

16   me give you a date.

11:33:10 17        *(Sotto voce discussion between the Court and law clerk.)*

11:33:12 18        **THE COURT:**  So let's see.  October 6th will be your

19   meet-and-confer.  That would be the 11th for any follow-up.

11:33:30 20        **MS. AGENA:**  I'm sorry.  October, Your Honor?

11:33:32 21        **THE COURT:**  No, no.  September.  If -- if your meet --

22   oh, let me go back here.  Today's the 16th.  Three weeks from

23   today is September the 6th.  I gave you three business days

24   after that to file something in writing, if necessary.  That's

25   September the 11th.

11:33:53  1        So Mr. Massey and co-counsel would need some time to

       2  digest that, perhaps respond.

11:34:11  3        Ms. Edwards, what do we look like on October the 3rd

       4  or 4th?

11:34:23  5     *(Sotto voce discussion between the Court and case manager.)*

11:34:26  6        **THE COURT:**  Okay.  October the 4th, 10:30 a.m., that's

       7  your next scheduled hearing.  So if this issue about April -- my

       8  orders from April the 12th have not been tied off, we'll take

       9  that up at that time.  And, also, we can address the issue of

      10  the next phase of discovery and/or the scheduling order at

      11  that -- at that hearing.

11:34:56 12        **MR. MASSEY:**  Perfect, Your Honor.  One question.

11:34:57 13        **THE COURT:**  Uh-huh.

11:34:58 14        **MR. MASSEY:**  Do we have a deadline for the detailed

      15  affidavit from Wipro regarding its complaint?

11:35:04 16        **THE COURT:**  Yes.  Counsel, when do you think -- how

      17  much time do you think you need on that?

11:35:19 18        **MS. AGENA:**  We can certainly, I think, do that by

      19  September 11th.

11:35:23 20        **THE COURT:**  Perfect.

11:35:24 21        **MS. AGENA:**  Same time as the response.  It's going to

      22  be just a little tricky because we're dealing with people in

      23  other time zones.

11:35:29 24        **THE COURT:**  That's fine.  And then that gives

      25  Mr. Massey one, two -- three weeks prior to the hearing to meet

1   and confer with you about those affidavits and/or formulate a

2   argument to the Court about any alleged deficiencies in that, as

3   well, and give you an opportunity to respond.

11:35:52  4      So to the extent that either party has any contentions

5   remaining from the April the 12th orders that will -- that we

6   will discuss at the October the 4th hearing, those need to be on

7   file, your briefing, no later than September the 30th, close of

8   business.  So that's approximately a week beforehand, and the

9   Court will have the opportunity to prepare by reading and

10  getting prepared for that.

11:36:29  11     MR. SPALDING:  One more comment, Your Honor.  The

12  defendants have on file a motion for judgment on the pleadings.

13  Since we have now built in a date to file our comprehensive

14  motions for summary judgment in this case, I think maybe the

15  best thing to do is for the Court to ignore that motion for the

16  time being, and we'll incorporate it into our -- our motions for

17  summary judgment when we file those in December.

11:36:57  18     MS. AGENA:  January.

11:36:58  19     MR. SPALDING:  January.  My apologies.

11:37:11  20     THE COURT:  By "incorporate," you mean file a response

21  to?

11:37:16  22     MR. SPALDING:  No, no.  We have -- we filed it back in

23  March.  It's sitting there.

11:37:19  24     THE COURT:  Oh, I --

11:37:20  25     MR. SPALDING:  We can -- I'm suggesting it may be

```
           1    easier for the Court not to worry about that at this point, and

           2    we'll incorporate it and flesh it out a little further in our

           3    motion for summary judgment.

11:37:28   4            THE COURT:  Very well.

11:37:28   5            All right.  Anything else, Counsel?

11:37:31   6        MR. MASSEY:  No, Your Honor.  Not from plaintiffs.

11:37:33   7        MS. AGENA:  No, Your Honor.  Thank you.

11:37:35   8        THE COURT:  All right.  Thank you, Counsel.  Have a

           9    good weekend.  You're excused.

11:37:42  10        MR. SPALDING:  Thank you.

11:37:42  11        MR. MASSEY:  You, too.

11:37:44  12        MR. VON KLEMPERER:  Thank you, Your Honor.

          13        (Proceedings concluded at 11:37 a.m.)

          14                        -o0o-

          15        I certify that the foregoing is a correct transcript

          16    from the record of proceedings in the above matter.

          17

          18    Date:  September 13, 2019

          19                    /s/ Heather Alcaraz
                                Signature of Court Reporter

          20

          21

          22

          23

          24

          25
```