**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY MACLEAN, RICK VALLES, ARDESHIR PEZESHKI, JAMES GIBBS, and RONALD HEMENWAY, individually and in their representative capacities,<br><br>        Plaintiffs,<br><br>v.<br><br>WIPRO LIMITED,<br><br>        Defendant. | Civil Action No. 20-3414 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Plaintiffs, Gregory MacLean ("MacLean"), Rick Valles ("Valles"), Ardeshir Pezeshki ("Pezeshki"), James Gibbs ("Gibbs"), and Ronald Hemenway ("Hemenway") (collectively, "Plaintiffs"), brought this employment discrimination action under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, on behalf of themselves and all others similarly situated, against their former employer, Defendant Wipro Limited ("Wipro" or "Defendant"). Plaintiffs allege that Defendant, an Indian company that provides technology and consulting services, engaged in an intentional pattern and practice of employment discrimination against individuals who are not South Asian[1] or of Indian national origin, including hiring, promotion, evaluation, and termination decisions. Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") on various grounds, including the first-filed rule, statute of limitations, and

---

[1] According to Plaintiffs, "South Asian" refers to individuals who trace their ancestry to the Indian subcontinent. "Indian" refers to individuals born in India, or whose ancestors came from India.

failure to state a claim under Fed. R. Civ. P. 12(b)(6).  For the reasons that follow, Defendant's

Motion to Dismiss is **DENIED**, but its alternative request to stay, based on the first-filed rule, is

**GRANTED**.  Plaintiffs' claims against Defendant are stayed pending a class certification decision

in *Phillips v. Wipro Limited, et al.*, No. 4:18-cv-00821.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

For the purposes of this motion, the Court takes as true all allegations of the FAC.

Defendant is a multinational professional services company that provides information technology

and consulting services to customers worldwide.  (FAC at ¶ 1.)  Plaintiffs are former Wipro

employees who allege that Defendant engages in a pattern or practice of intentional race and

national origin discrimination in violation of Title VII and § 1981, and that the company uses

employment practices that result in a disparate impact on non-South Asians and non-Indians in

violation of Title VII.  (*See* FAC ¶¶ 1-2, 79-92; *see also* 42 U.S.C. §§ 1981, 2000e–2.)

More specifically, MacLean, a "Caucasian" man of "American national origin," was

employed by Wipro from May 2011 until February 2019.  (*Id.* at ¶¶ 3, 28, 32.)  Defendant hired

MacLean when Wipro acquired Science Application International Corporation ("SAIC") in 2011.

*Id.* at ¶ 27.  From May 2011 until December 2018, MacLean worked as a Software Analyst on a

"project servicing BP Arco," a former client of SAIC.  (*Id.* at ¶¶ 27-28.)  When the project

concluded, MacLean was placed on the "bench," a term defined by the FAC to mean that he was

placed in a "non-productive status" until Defendant selected him for a position on another project.

(*Id.* at ¶¶ 16, 30.)  MacLean claims that he "actively sought" new positions within Wipro but

"received very few responses" to his applications.  (*Id.* at ¶ 30.)  Indeed, the FAC alleges that

MacLean expressed interest in two positions—one located in San Diego and the other in Los

Angeles—but he was never selected for the positions.  (*Id.*)  MacLean further claims that Wipro

"regularly" failed to provide him with an "appraisal," and that he was "never promoted."  (*Id.* at ¶ 33.)  Finally, MacLean alleges that in February 2019, Wipro "falsely submitted a 'resignation' letter" on his behalf through Defendant's intranet.  After MacLean informed Wipro that he had not resigned, he was reinstated.  (*Id.* at ¶ 31.)  Several weeks later, on February 25, 2019, Wipro terminated MacLean's employment.  (*Id.* at ¶ 32.)

Valles, an "Hispanic" man of "American national origin," was also hired when Wipro acquired SAIC.  Like MacLean, Valles allegedly worked on the BP Arco project, was benched when the project ended, and Wipro never contacted him about opportunities within the company while benched.  (*Id.* at ¶¶ 38-39.)  On January 31, 2015, Wipro allegedly terminated Valles' employment.  (*Id.* at ¶ 40.)  Valles claims that he and the rest of his SAIC colleagues acquired by Wipro (who were allegedly all non-South Asian and non-Indian) were terminated and replaced by South Asian employees.  (*Id.*)  Valles further alleges that Wipro failed to provide him with an appraisal and never promoted him.  (*Id.* at ¶ 41.)  Instead, Valles purportedly received only either "very small" raises or no raise at all.  (*Id.*)  After Valles' termination, he also allegedly applied to several IT analyst positions with Wipro in the Los Angeles area, for which he was purportedly "well qualified," but Wipro never contacted him about his applications.  (*Id.* at ¶ 43.)

Pezeshki, a "Caucasian" man of "Iranian national origin," was hired by Wipro as a "Practice Director of business process digitization" on July 2, 2012.  (*Id.* at ¶¶ 5, 44-45.)  While working in Wipro's Mountain View, California office, Pezeshki allegedly observed that Wipro's management and employees "had a cultural preference for hiring and working with South Asians and Indians."  (*Id.* at ¶ 46.)  More specifically, Pezeshki alleges the majority of individuals selected for positions within the United States were South Asian, despite these individuals purportedly being "poorly skilled and unqualified for the positions."  (*Id.*)  Pezeshki further claims that he was

"regularly treated with hostility by his South Asian managers and colleagues," and that he began to receive low appraisal ratings after he raised concerns about Wipro's employees not being truthful to clients about employees' qualifications.  (*Id.* ¶ 47-48.)  Finally, Pezeshki alleges that he was never promoted, and that he was passed over for a promotion in favor of his immediate manager, who was "South Asian" and purportedly "less experienced."  (*Id.* at ¶¶ 49, 51.)  Like MacLean and Valles, Wipro allegedly did not assist Pezeshki in finding a new position after he was placed on the bench in March 2018.  (*Id.* at ¶ 49.)  On June 1, 2018, Wipro terminated Pezeshki's employment.  (*Id.* at ¶ 50.)

Gibbs, a "Caucasian" man of "American national origin," was hired by Wipro in 2012, as a Global Client Partner serving Wipro's FedEx client account, an organization with which he had a previous sales relationship.  (*Id.* at ¶¶ 6, 53.)  While employed by Defendant, Gibbs worked in Memphis, Tennessee.  (*Id.* at ¶ 53.)  Gibbs alleges that, despite his "strong performance," he was "never promoted."  (*Id.* at ¶ 56.)  Indeed, the FAC alleges that Gibbs attempted to discuss the promotion process with his boss, Devprasad Rambhatla, Wipro's Vice President of Travel, Transportation & Hospitality, but neither Rambhatla, nor others at Wipro, would discuss the promotion process or the possibility of promotion.  (*Id.*)  Gibbs further alleges that Rambhatla "quadrupled [his] sales and margin quotas to levels that were unrealistic," was "rude and condescending to [him]," and "forc[ed] him to work 70-80 hours each week."  (*Id.* at ¶ 57.)  In 2015, Gibbs claims that he became aware that Wipro was advertising his position on LinkedIn, and "understood that Wipro was looking for a South Asian of Indian descent" to fill his position.  (*Id.* at ¶ 58.)  As a result, Gibbs alleges that he "decided to quit rather than be fired by Wipro." (*Id.*) In September 2015, Gibbs resigned, and he was allegedly replaced by Anand Shanmugham, "a South Asian of Indian descent," who was then "promptly" promoted.  (*Id.*)  At the time of his

4

resignation, Gibbs claims that he was the only non-South Asian who reported directly to Rambhatla, that each of the other "seven or eight non-South individuals" who had previously reported to Rambhatla had been terminated or had quit, and that each of those positions was replaced by an employee of "South Asian of Indian descent." (*Id.* at ¶ 59.)

Hemenway, a "Caucasian" man of "American national origin," began working at Wipro as a Program Director in September 2019. (*Id.* at ¶¶ 7, 63.) After Hemenway was hired, he was assigned to a project with Capital One located in Richmond, Virginia. (*Id.* at ¶ 63.) While working on the Capital One project, Hemenway alleges that he observed that many of his South Asian colleagues "were unqualified for the work they were performing." (*Id.* at ¶ 65.) In addition, he claims that he was given "menial work," despite possessing a substantial amount of experience, and that his managers would "sometimes exclude [him] from workplace discussions by speaking in a South Asian dialect he could not understand." (*Id.* at ¶ 66.) In late November or early December 2019, Hemenway alleges that he was removed from the Capital One project and benched. (*Id.* at ¶ 67.) Hemenway further alleges that he actively sought a new position within Wipro, but he was not selected for any positions. (*Id.*) On February 26, 2020, Defendant terminated Hemenway's employment with the company. (*Id.*) In short, Hemenway claims that while he was employed at Wipro, Defendant failed to provide him with "a performance evaluation" and "never promoted" him. (*Id.* ¶ 68.) Since his termination, recruiters have allegedly contacted Hemenway "regarding opportunities for employment with Wipro," and although he "was interested and asked to be considered," Wipro "never re-hired him." (*Id.* at ¶ 69.)

Together, Plaintiffs allege that Wipro engages in four distinct discriminatory employment practices that demonstrate a preference for South Asians and Indians. (*Id.* at ¶¶ 17-24.) First, Wipro allegedly submits "visa petitions for more positions than actually exist" in the United

States.[2]  (*Id.* at ¶ 19.)  Plaintiffs claim that although individuals already located in the United States, and foreign individuals who are "visa-ready," are considered for open positions located in the United States, Defendant's South Asian and Indian visa-ready individuals are given preference for these positions.  (*Id.* at ¶ 20.)  Similarly, "non-South Asian and non-Indian individuals are often displaced from their current positions in favor of South Asian and Indian visa-ready individuals." (*Id.*)  Second, Plaintiffs allege that Wipro, both through its internal recruiting department and third-party recruiting companies, gives preference to South Asian and Indian applicants located in the United States over non-South Asian and non-Indian applicants.  (*Id.* at ¶ 21.)  Third, Plaintiffs allege that "because of its discriminatory preference for South Asians and Indians, Wipro promotes South Asians and Indians at disproportionately high rates compared to non-South Asians."  (*Id.* at ¶ 22.)  Critical to receiving a promotion, Wipro employees must receive a "favorable appraisal score" and "must be nominated for a promotion by their immediate manager and have that nomination approved by their manager's manager."  (*Id.*)  Plaintiffs claim that some non-South Asian and non-Indian employees never receive appraisals, and those that do receive appraisals, are awarded lower scores compared to South Asian and Indian employees.  (*Id.*)  Fourth, Plaintiffs allege that Wipro benches and terminates non-South Asians and non-Indians at disproportionately higher rates compared to South Asians and Indians.  (*Id.* at ¶ 23.)

Plaintiffs also seek to represent a class of applicants, employees, and former employees who were subject to Wipro's alleged discriminatory practices.  (*Id.* at ¶¶ 70-78.)  In that regard, Plaintiffs bring this action on behalf of the following three classes: 1) "all persons who are not of South Asian race or Indian national origin who applied for positions with Wipro in the United

---

[2]      For example, the FAC alleges that although Defendant employs less than 15,000 individuals in the United States, Defendant received 5,968 new visas in 2015 and 6,831 new visas in 2016.  (FAC at ¶ 19.)

States and were not selected for the position," 2) "all persons who are not of South Asian race or Indian national origin who were employed by Wipro in the United States for the minimum amount of time necessary to be eligible for a promotion pursuant to Wipro's policies and/or practices, and were not promoted," and 3) "all persons who are not of South Asian race or Indian national origin who were employed by Wipro in the United States and were terminated." (*Id.* at ¶ 70.)

The FAC asserts three causes of action on behalf of Plaintiffs and the putative classes for disparate treatment on the basis of race in violation of 42 U.S.C. § 1981, disparate treatment on the basis of race and national origin in violation of Title VII, and disparate impact on the basis of race and national origin in violation of Title VII. (*Id.* at ¶¶ 79-92.) Plaintiffs seek compensatory and punitive damages, a declaratory judgment, and a permanent injunction.

### B.    Procedural History

On December 1, 2017, two former Wipro employees, James Phillips and Robert Saemian ("*Phillips* Plaintiffs"), filed a putative class action ("*Phillips* Action") against Defendant in the United States District Court for the Northern District of California, alleging that Wipro discriminated against them because they are neither South Asian nor Indian. *See Phillips*, No. 4:18-cv-00821, ECF. No. 1. Substantially similar to the FAC, the Complaint in the *Phillips* Action asserts claims of disparate treatment on the basis of race in violation of § 1981, disparate treatment on the basis of race and national origin in violation of Title VII, and disparate impact on the basis of race and national origin in violation of Title VII. On March 14, 2018, the *Phillips* Action was transferred to the United States District for the Southern District of Texas. *Id.* at ECF No. 25.

On November 26, 2019, the *Phillips* Plaintiffs moved for leave to amend to add MacLean, Valles, Pezeshki, and Gibbs as named plaintiffs. *Id.* at ECF No. 117. The district court, there, denied the motion on the ground that adding four additional named plaintiffs "so late in the litigation" would "substantially expand the scope of discovery" and "unduly prejudice Defendant,

when ultimately the claims of the Proposed Plaintiffs would be included in any class that the Named Plaintiffs seek to certify." *See Phillips*, No. 4:18-cv-00821, ECF No. 134, at 2–3. Discovery in the *Phillips* Action is ongoing, and the court has not issued a decision on class certification.

After the Texas court's denial of their motion to amend, Plaintiffs filed charges with the Equal Employment Opportunity Commission (EEOC) in February and March 2020.  (*See* Hart Decl., Ex. B (MacLean EEOC charge, filed February 11, 2020); Hart Decl., Ex. C (Valles EEOC charge, filed February 21, 2020); Hart Decl., Ex. D (Pezeshki EEOC charge, filed February 22, 2020); Hart Decl., Ex. E (Gibbs EEOC charge, filed February 13, 2020); Hart Decl., Ex. F (Hemenway EEOC charge, filed March 24, 2020).) Plaintiffs' EEOC charges allege that Wipro engages in the pattern of discrimination referenced in the instant Complaint, including "employment practices" that purportedly "have a disparate impact on non-South Asian applicants and employees."  (Hart Decl., Exs. B-F at ¶¶ 10–16.)  Plaintiffs received right-to-sue letters from the EEOC.

On March 30, 2020, Plaintiffs, represented by the same counsel as the plaintiffs in the *Phillips* Action, filed the instant Complaint in this Court, and amended their Complaint on June 1, 2020.  (ECF Nos. 1 and 6.)  The FAC adds a Title VII claim on behalf of Hemenway, who received a right-to-sue letter from the EEOC on May 19, 2020.  On June 11, 2020, Defendant filed the instant Motion to Dismiss.  (ECF No. 11, Defendant's Motion to Dismiss.)

## II.   <u>LEGAL STANDARD</u>

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Fed. R. Civ. P.  12(b)(6).  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted).   In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[M]ere restatements of the elements of [a] claim[ ] ... are not entitled to the assumption of truth." *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim ... and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014).  "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted).  Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation omitted)).

## III.   <u>DISCUSSION</u>

Defendant moves to dismiss the FAC on the following grounds: 1) the first-filed rule; 2) statute of limitations; and 3) failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6).  Because the Court finds that the first-filed rule applies, the Court need not address Defendant's remaining arguments.

The "first-filed rule" or "first-to-file rule" permits "trial judges to exercise their discretion by enjoining the subsequent prosecution of similar cases ... in different federal district courts." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) *aff'd*, 493 U.S. 182 (1990). "The letter and the spirit of the first-filed rule ... are grounded on equitable principles" and "the rule's <u>primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments</u>."  *Id.* at 977 (citations omitted) (emphasis added). Therefore, where related suits "involving the same parties and subject matter are pending concurrently, the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit." *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D.N.J. 1993). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C.*, 850 F.2d. at 972.  The rule permits a district court to stay, transfer, or dismiss a duplicative later-filed action.  *Maximum Human Performance. Inc. v. Dymatize Enterprises, Inc.*, No. 09–235, 2009 WL 2778104 (D.N.J. Aug. 27, 2009), report and recommendation adopted, 2009 WL 2952034 (D.N.J. Sept. 14, 2009) (citation omitted).  "In determining the applicability of the first-filed rule, courts in the Third Circuit examine the chronology of the actions in addition to the overlapping subject matter, issues, claims, and parties."

*Worthington v. Bayer Healthcare, LLC*, No. 11-2793, 2012 WL 1079716, at *3 (D.N.J. Mar. 30, 2012) (citing *Catanese v. Unilever*, 774 F.Supp.2d 684, 687–89 (D.N.J. 2011)).

However, the first-to-file rule is not absolute.  The exceptions provide that a court may decline to apply the rule on the basis of "(1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5); where the later-filed action has developed further than the first-filed action; and (6) 'when the first filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum.'" *Id.* (quoting *E.E.O.C.*, 850 F.2d at 976); *see also Catanese*, 774 F. Supp. 2d at 690 (the rule does not apply "where there is evidence of bad faith, anticipatory suit, or forum shopping.").

Here, Defendant contends that this case should be dismissed or, in the alternative, stayed because the *Phillips* Action was filed first, the subject matter and claims in both actions are identical, and the putative classes in both actions are identical.  (Def. Moving Br. at 10-14.) Defendant argues that application of the first-filed rule would promote fairness and judicial economy, because if Wipro were to proceed in this action, it would be litigating the same issues as the *Phillips* Action.  (*Id.* at 13.)

In response, Plaintiffs do not contest the chronology of the two actions, nor do they refute the overlap between the two cases as to the subject matter, issues, claims, and parties.  (Pl. Opp. at 5-8.)  Rather, Plaintiffs argue that Defendant's bad faith and gamesmanship make application of the first-filed rule inequitable.   (*Id.* at 5-6.)  Specifically, Plaintiffs argue that Defendant "successfully prevented" Plaintiffs in this case from joining the *Phillips* Action, despite "emphatically and repeatedly" arguing that the *Phillips* Plaintiffs "cannot adequately represent a class due to their weak claims."  (*Id.*)  According to Plaintiffs, Defendant, however, inconsistently posits in this case that, "while Plaintiffs cannot technically advance claims in Texas […,] the Court

should nonetheless dismiss this case because the *Phillips* Plaintiffs can adequately represent Plaintiffs' interests through the class action mechanism." (*Id.* at 6.) Therefore, Plaintiffs claim that granting Defendant's motion would result in their claims not being heard in Court, and their recovery would depend "entirely on the adequacy of representation of two individuals whose claims Wipro has so aggressively attacked." (*Id.*)

Finally, Plaintiffs claim that the equities favor not applying the first-filed rule. (*Id.*) After Defendant contested the *Phillips* Plaintiffs' adequacy to represent a class, Plaintiffs argue that they did what was required under *China Agritech v. Resh*, 138 S. Ct. 1800, 1810-11 (2018), to preserve their class claims – *i.e.*, they first sought to intervene in the *Phillips* Action and then filed the complaint in this case after the Southern District of Texas Court denied their motion to amend. In *China Agritech*,[3] Plaintiffs contend the Supreme Court acknowledged that its ruling would result in a "multiplicity of class-action filings" and that these filings "could be filed in different districts, at different times, . . . or on behalf of only partially overlapping classes," but rejected the premise that such multiple filings were "needless" or could not be managed. *Id.* at 1811. Therefore, guided by *China Agritech*, Plaintiffs maintain that it would be inequitable to dismiss this case under the first-filed rule.

After review of the *Phillips* Action and the FAC, I am inclined to agree with Defendant that the first-filed rule applies in this circumstance. Although the first-filed rule is traditionally

---

[3]    In *China Agritech*, the Supreme Court was presented with the question of whether after "denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations?" 138 S. Ct. at 1804.   The Court held that *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 541 (1974), does not toll the claims of "a putative class representative ... who brings his claims as a new class action after the statute of limitations has expired," reasoning that "the 'efficiency and economy of litigation' [rationales] that support tolling of individual claims ... do not support maintenance of untimely successive class actions." *Id.* at 1806 (quoting *Am. Pipe*, 414 U.S. at 553).

invoked in non-class contexts, the weight of authorities suggest that it may be expanded to class action suits filed by different class representatives against the same defendant. *Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361, 366 (D.N.J. 2010); *Catanese*, 774 F. Supp. 2d at 688; *Worthington*, No. 11-2793, 2012 WL 1079716, at *6. As discussed further, *infra*, courts in this context have compared the classes, not the class representatives, when assessing the similarities between the actions. Moreover, courts that have applied the first-filed rule in the class context have emphasized their desire to avoid duplicative, competing class actions, which could produce inconsistent judgments and burden the judiciary. Accordingly, these same courts have typically only applied the first-filed rule where a high degree of similarity existed between the presumed first-filed action and the later-filed case. Here, there is no dispute that the first-filed *Phillips* Action, which awaits a decision on class certification, shares the same subject matter, issues, claims, and class as the FAC. In fact, and not surprisingly, since the same counsel represents the Phillips Plaintiffs and the Plaintiffs here, the class allegations, claims and remedies are not just cut from the same cloth, but they are indistinguishable. I proceed to address each of the first-filed rule factors, and the exceptions to the rule, in turn.

### A. Chronology

As to chronology, "the Third Circuit has held that the policy reasons underlying the first-filed rule are 'just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits.'" *Catanese*, 774 F.Supp.2d at 688-89 (quoting *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*, 130 F.2d 474, 475 (3d Cir. 1942)). Here, the circumstances easily satisfy the chronology requirement, and as such, the parties do not dispute this criterion. The *Phillips* Complaint was filed on December 1, 2017—850 days prior to the instant Complaint. The Court does acknowledge, however, that Plaintiffs did not file the instant

action as an attempt to compete with the *Phillips* Action.  In fact, Plaintiffs attempted to intervene

in the *Phillips* Action prior to filing the FAC; however, their motion to amend the complaint was

denied.  Following denial of their motion to amend, the same counsel representing the *Phillips*

Plaintiffs in that action filed the instant Complaint on behalf of these Plaintiffs.

**B.  Subject Matter and Issues**[4]

Next, the Court finds that the subject matter and issues contained in the FAC are identical

to those in the first-filed *Phillips* Complaint.  "[T]he most important consideration in a first-filed

rule analysis is overlapping subject matter." *Catanese*, 774 F.Supp.2d at 687; *Ivy Dry, Inc. v. Zanfel*

*Labs., Inc.*, No. 08–4942, 2009 WL 1851028, at *5 (D.N.J. June 24, 2009) ("[A] plain reading of

the Third Circuit's opinion in *E.E.O.C.* strongly suggests that whether the cases share subject

matter is more important than the absolute identity of the parties.") (quoting *E.E.O.C.*, 850 F.2d at

971); *Worthington*, No. 11-2793, 2012 WL 1079716, at *4 n.3 (evaluating the proposed class

definition to determine whether the competing actions were focused on the same subject matter

before the class had been certified).

Here, I agree with Defendant's assessment that the FAC is "a near carbon copy" of the

*Phillips* Complaint.  (Def. Moving Br. at 10.)  A comparison of the *Phillips* Complaint and the

FAC demonstrates that both pleadings contain identical allegations regarding Defendant's

---

[4]      I acknowledge that there are cases in the non-class context, holding that the first-filed rule
must be interpreted narrowly, applying only where the proceedings are "truly
duplicative." *See Complaint of Bankers Trust Co. v. Chatterjee,* 636 F.2d 37, 40 (3d
Cir.1980) (rejecting application of the first-filed rule where a non-class plaintiff's theories would
be subject to different legal standards—"general admiralty principles" for a limitation claim,
versus the traditional tort principles for a legal malpractice claim—and where different burdens of
proof would apply); *Kedia v. Jamal,* No. 06–6054, 2007 WL 1239202, at *3 (D.N.J. Apr. 25,
2007) (rejecting application of the first-filed rule where a non-class plaintiff did not meet the
"identity of parties" because he was only "indirectly implicated" in the first-filed
action).  However, here, the class claims, and the proposed class members, are nearly identical.

purported discriminatory employment practices, specifically, Defendant's purported preference for South Asian or Indian employees. In fact, paragraphs 17 to 25 of the FAC, which recount Defendant's purported "Discriminatory Scheme," are reproduced verbatim from paragraphs 14 to 22 of the *Phillips* Complaint.[5] In these nine identical paragraphs, Plaintiffs introduce the four discriminatory employment practices, *supra*, that allegedly comprise Defendant's "general policy of discrimination." Tellingly, Plaintiffs do not dispute the overlapping nature of the subject matter and issues between the *Phillips* Action and this case.

## C. Claims

Similarly, it is immediately apparent from the FAC and the *Phillips* Complaint that the two cases assert duplicative claims. Here, both pleadings assert (1) disparate treatment claims under § 1981 and Title VII, based on Wipro's alleged discrimination against non-South Asians and Indians in employment decisions, including hiring, promotion, and termination decisions, and (2) disparate impact claims under Title VII, based on Wipro's policies and practices related to hiring, promotion, and termination of individuals that have had a disparate impact on the basis of national origin and race. (*See* FAC at ¶¶ 79-92; Declaration of Grace E. Hart, Esq. ("Hart Decl.") in Support of Defendant's Motion to Dismiss, Ex. A at ¶¶ 56-69.) Moreover, as emphasized by Defendant, the FAC and the *Phillips* Complaint seek the same remedies. (*See* FAC at 22-23; Hart Decl., Ex. A at 20-21.) Indeed, Plaintiffs do not refute that the claims are identical.

## D. Parties

Finally, the Court finds that the composition of the parties warrants application of the first-filed rule. Certainly, the singular defendant, Wipro, is the same in both actions. With respect to

---

[5]    The Court emphasizes that even the headings of this section of the FAC and the *Phillips* Complaint, which read "Overview of Wipro's Discriminatory Scheme," are identical.

the plaintiffs, while the class representatives are different, the proposed nationwide classes are identical.  *See Abushalieh*, 716 F. Supp. 2d at 366 (applying the first-filed rule where putative classes were identical); *Catanese*, 774 F. Supp. 2d at 688 (finding that "in a class action, the classes, and not the class representatives, are compared") (quoting *Ross v. U.S. Bank Nat'l Ass'n*, 542 F.Supp.2d 1014, 1020 (N.D.Cal. 2008); *Worthington*, No. 11-2793, 2012 WL 1079716, at *6 (finding the first-filed rule applied where the parties and classes overlapped with the parties and classes found in an earlier filed case in the Southern District of California).[6]

For example, in *Abushalieh*, delivery drivers brought a putative class action against their employer, alleging violation of Fair Labor Standards Act related to employer's alleged misclassification of drivers as independent contractors, rather than employees.  The employer moved to dismiss the action under the first-filed rule based on previously filed actions in the Eastern District of Pennsylvania.  716 F. Supp. 2d at 362-64.  Upon review of the pleadings, the court found that, like here, the cases were "truly duplicative."  *Id.* at 366.  The court reasoned that both pleadings "raise[d] identical issues and [sought] identical relief on behalf of an identical group

---

[6]     District courts in other jurisdictions have similarly applied the first-filed rule in class actions where, like here, the putative classes were the same. *See Molander v. Google LLC*, No. 20-00918, 2020 WL 4201821, at *1 (N.D. Cal. July 22, 2020) (granting a defendant's motion to stay pursuant to the first-filed rule where the defendant and the putative classes were the same); *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 401, 404 (E.D.N.Y. 2013) (granting a defendant's motion to dismiss pursuant to the first-filed rule where the class claims were substantially similar); *Kendus v. USPack Servs. LLC*, No. 19-00496, 2020 WL 1158570, at *2 (D. Md. Mar. 10, 2020) (granting a defendant's motion to transfer pursuant to the first-filed rule where every party in the second filed case was either a party in the first filed case, or included in that case's proposed class definition); *Byler v. Air Methods Corp.*, No. 17-236, 2017 WL 10222371, at *3 (N.D. Ohio Aug. 30, 2017) (granting a defendant's motion to stay based on the first-filed rule where the plaintiffs, along with their putative class, would be included in the first-filed action's class if it were certified); *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010) (finding the first-filed rule applicable to two actions with similar putative classes, but denying the defendant's motion to dismiss based on an exception to the first-filed rule).

of proposed plaintiffs against the identical defendant." *Id.* Specifically, with respect to the similarities between the parties, the court explained:

> While in a typical civil action the presence of different defendants or different plaintiffs may result in cases that are not "materially on all fours" with each other, <u>such is not the case with two collective actions against the same defendant</u>. Where each set of named plaintiffs intends to represent the other set, the underlying principles of the first-filed rule which seek to avoid "vexation of subsequent litigation over the same subject matter" and "the economic waste involved in duplicating litigation," and to promote "prompt and efficient administration of justice," permit this Court to defer to the court of first jurisdiction. *See Crosley*, 122 F.2d at 929–30. <u>The Court sees no need to wait until a decision is made on a motion for class certification in Spellman before applying the first-filed rule, because both cases are already being litigated on behalf of the same set of proposed plaintiffs, making the parties "essentially the same."</u> *See Alvarez*, 2009 WL 1473933, at *2–3. Under the first-filed rule, this Court should not battle with the Spellman court over the same case.

*Id.* (emphasis added).

Similarly, in *Catanese*, the plaintiffs brought a class action against an ice cream manufacturer, claiming that the ice cream was falsely represented as all natural. *Id.* at 685-86. The manufacturer moved to dismiss, stay, or transfer the matter pursuant to the first-filed rule, arguing that the *Catanese* action was virtually identical to an earlier-filed putative class action pending in the United States District Court for the Northern District of California. *Id.* In granting the manufacturer's motion, the district court found the parties to be similar. *Id.* at 687-89. The district court explained that although the class representatives were different, the proposed nationwide classes were identical. *Id.* at 688. Therefore, the court found that if nationwide classes were certified in both actions, each of the named plaintiffs would be included in the other's class. *Id.* The court reasoned that allowing a parallel action to proceed that "involves putative absent class members from an earlier-filed class action" would cause "substantial duplication of effort,

and worse, potentially inconsistent rulings." *Id.* ("This would frustrate one of the primary purposes of the rule, which is to avoid the embarrassment of conflicting judgments.") (citing *E.E.O.C.*, 850 F.2d at 977).

Here, Plaintiffs do not argue that this action should proceed only with their individual claims, but instead, insist on bringing class claims.  Moreover, Plaintiffs do not dispute that they assert claims on behalf of the exact same proposed nationwide class as the *Phillips* Plaintiffs. Specifically, the *Phillips* Action and the instant action assert claims on behalf of "[a]ll persons who are not of South Asian race or Indian national origin" who: (1) "applied for positions with Wipro in the United States and were not selected for the position," (2) "were employed by Wipro in the United States for the minimum amount of time necessary to be eligible for a promotion pursuant to Wipro's policies and/or practices, and were not promoted," and (3) "were employed by Wipro in the United States and were terminated."  (*See* FAC at ¶¶ 70-78; Hart Decl., Ex. A at ¶¶ 47-55.)  In fact, paragraphs 70 to 78 of the FAC, which contain the class action allegations, are indistinguishable from paragraphs 47 to 55 of the *Phillips* Complaint.  Accordingly, in order to prevent potentially inconsistent rulings, specifically as it relates to class certification, and avoid duplicative class actions, I find the parties sufficiently similar to warrant application of the first-filed rule.

### E.  Exceptions to the First-Filed Rule and Appropriate Remedies

As discussed above, courts may decline to apply the first-filed rule on the basis of rare or extraordinary circumstances, bad faith, or forum shopping.  *E.E.O.C.*, 850 F.2d at 976; *see also Catanese*, 774 F. Supp. 2d at 690 (explaining that the rule does not apply "where there is evidence of bad faith, anticipatory suit, or forum shopping.").

Here, Plaintiffs argue that the Court should not invoke the first-filed rule based on Defendant's bad faith, gamesmanship, and contradictory positions.   In response, Defendant maintains that Plaintiffs have "failed to meet their 'burden of demonstrating an exception to the [first-filed] rule that warrants the Court's departure from it.'" (Def. Reply Br. at 2) (citing *Pai v. Reynolds Foil, Inc.*, No. 10–1465, 2010 WL 1816256, at *4 (D.N.J. May 5, 2010)).   More specifically, Defendant argues that its opposition to class certification in the *Phillips* Action is not "bad faith."   According to Defendant, the bad faith exception applies where the party seeking to invoke the first-filed rule "filed the first action in order to preempt an unfavorable ruling in another court." *Pai*, No. 10-1465, 2010 WL 1816256, at *5.   Defendant submits that this exception is inapplicable here, because Wipro did not choose to be sued in the *Phillips* Action, and the *Phillips* Action was not filed to preempt an unfavorable ruling in this Court.

I agree with Defendant's position, and therefore, decline to find that any exceptions apply. As a preliminary matter, Plaintiffs did not provide any cases in which courts have declined to apply the first-filed rule merely because a defendant's opposition to class certification in the first-filed action allegedly constituted bad faith.[7]   Moreover, to the extent Plaintiffs argue that the first-filed rule should not apply because Defendant has taken "contradictory positions" in this action and the *Phillips* Action, I find that argument lacks merit and that Plaintiffs' reliance on *Swetra v. DirecTV, LLC*, No. 15-8761, 2016 WL 4208440 (D.N.J. Aug. 9, 2016) is misplaced.   In *Swetra*, the court

---

[7]   Indeed, courts have found that the first-filed rule may apply in the class context to cases that have not received a decision on class certification.  *O.P. Schuman & Sons, Inc. v. DJM Advisory Grp., LLC*, No. 16-3563, 2017 WL 634069, at *3 (E.D. Pa. Feb. 16, 2017) (finding that a defendant's opposition to class certification in both the first-filed action and the later action did not prevent application of the first-filed rule); *see also Santana v. Cavalry Portfolio Servs., LLC*, No. 19-3773, 2019 WL 6173672, at *4 (S.D.N.Y. Nov. 19, 2019) (citing *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790 (6th Cir. 2016)).

declined to apply the first-filed rule, in part, because it could not reconcile the defendant's contrary positions. *Id.* at \*4-5. Despite arguing against class certification in the purported first-filed class action, the defendant argued that the first-filed rule warranted dismissal because the plaintiff's claims in the later-filed action were protected by the class action. *Id.* Plaintiffs, here, ignore, however, that the court's decision to decline application of the first-filed rule in *Swetra* was based on the salient fact that the second-filed action, unlike here, involved an individual claim, and not an "overlapping proposed class action[]." *Id.* at \*5-6. Indeed, the court emphasized that its review of the pleadings indicated that the plaintiff's individual claims might be "specifically excluded under the proposed class definition." *Id.* at \*5.

Moreover, as to Defendant's contradictory positions, Plaintiffs merely argue that Defendant cannot claim, here, that the *Phillips* Plaintiffs may adequately represent the interests of Plaintiffs in a class action, such that dismissing this case under the first-filed rule would not be prejudicial, while simultaneously arguing in the *Phillips* Action that the claims of the *Phillips* Plaintiffs are so weak that they cannot represent a class. Neither the likelihood of class certification in the *Phillips* Action, nor the adequacy of the *Phillips* Plaintiffs in representing a putative class are at issue before this Court, and these purported contradictory positions do not detract from the substantial similarities between this action and the *Phillips* Action, such that it would impact any analysis of the first-filed rule. To be clear, Plaintiffs do not dispute that this action and the *Phillips* Action involve <u>identical</u> claims under Title VII and § 1981 on behalf of <u>identical</u> putative nationwide classes of employees. Therefore, the purported inconsistencies or contradictory statements by Defendant have no bearing on the application of the first-filed rule to this action.

Finally, Plaintiffs' argument that the court should decline to apply the first-filed rule because Plaintiffs "did exactly what they were required to do under *China Agritech v. Resh* to

preserve their class claims," overlooks the Supreme Court's guidance in that same case regarding a multiplicity of class action filings.  While the *China Agritech* Court explained that a "multiplicity of class-action filings is not necessarily '"needless,"' because "multiple filings may aid a district court in determining, early on, whether class treatment is warranted, and if so, which of the contenders would be the best representative, the Court also explained that "district courts have ample tools at their disposal to manage" multiple class action filings.  *China Agritech*, 138 S. Ct. at 1811.  More specifically, the Court cited a district court's "ability to stay, consolidate, or transfer proceedings."  *Id.*  The first-filed rule is one of those referenced tools, and the Supreme Court's ruling in *China Agritech* does not prevent courts from exercising their discretion to dismiss, transfer, or stay identical actions, but rather encourages it in suitable situations, such as here.

Accordingly, where the Court finds that the first-filed rule applies, and that none of the exceptions apply, the first-filed rule "direct[s] courts to transfer, stay or dismiss an action...." *Nature's Benefit, Inc. v. NFI*, No. 06–4836, 2007 WL 2462625, at *3 (D.N.J. Aug. 27, 2007).  The Court may only reach one of these results after considering "fundamental fairness," which "dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction." *E.E.O.C.*, 850 F.2d at 977 (quotation omitted).

I find that a stay of the instant action is appropriate given the procedural posture of the *Phillips* Action.  The Third Circuit has instructed that "'[i]f the first-filed action is vulnerable to dismissal on jurisdictional or statute of limitations grounds, the court in the second-filed action should stay it or transfer it, rather than outright dismiss it.'" *See Chavez v. Dole Food Co.*, 836 F.3d 205, 217 (3d Cir. 2016) (en banc) (citation omitted) ("This guidance reflects the commonsense proposition that, in a case raising timeliness concerns, a court's decision to dismiss a second-filed suit could, if the limitations clock were to expire in the first forum, have the effect

of putting the plaintiffs entirely out of court."). Indeed, a stay is preferred to dismissal because a stay preserves a plaintiff's "right to litigate their claims in the federal forum should the [other] courts, for jurisdictional or other reasons, fail to adjudicate them" *Id.* at 220. Here, the *Phillips* Court has yet to rule on class certification, and therefore, I find dismissal of the instant action is inappropriate and inequitable. In the event class certification is denied, Plaintiffs' individual claims asserted in the FAC would not be adequately protected. Accordingly, should the *Phillips* Court deny class certification, Plaintiffs should be permitted to resume this litigation in pursuit of their claims.[8]

## IV.   **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**, but its alternative request to stay, based on the first-filed rule, is **GRANTED**. Plaintiffs' claims against Defendant are stayed pending a class certification decision in *Phillips v. Wipro Limited, et al.*, No. 4:18-cv-00821.

Dated: December 4, 2020                                    /s/ Freda L. Wolfson
                                                          Freda L. Wolfson
                                                          U.S. Chief District Judge

---

[8]      Similarly, if the class were certified in the *Phillips* Action and Plaintiffs elected to opt out, they should be permitted to pursue their individual claims here. Defendant would also be permitted to renew its arguments for dismissal, including violation of the statute of limitations and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).