Seton Hartnett O'Brien (New Jersey Bar No. 247732017)
Grace E. Hart (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Greta B. Williams (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Heather L. Richardson (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA 90071-3197
Tel: (213) 229-7000
Fax: (213) 229-7520

*Attorneys for Defendant Wipro Limited*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY MACLEAN, RICK VALLES, ARDESHIR PEZESHKI, JAMES GIBBS, and RONALD HEMENWAY, *individually and in their representative capacities*, <br><br> Plaintiffs, <br><br> v. <br><br> WIPRO LIMITED, <br><br> Defendant. | **Civil Action No. 3:20-cv-3414 (GC) (JBD)** <br><br> Motion Day: March 17, 2025 <br><br> Oral Argument Requested <br><br> Document Electronically Filed |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................... 2

    I.    The Parties and Summary of Allegations. .......................................... 2

    II.    Relevant Procedural History. ............................................................. 5

        A.    Plaintiffs Filed This Lawsuit In March 2020, Alleging Disparate Impact And Disparate Treatment. .......................... 5

        B.    In September 2022, This Court Dismissed Plaintiffs' Disparate Impact Claim. ................................................. 6

        C.    In December 2024, Plaintiffs Filed Their Second Amended Complaint, Re-Pleading Their Disparate Impact Claim. .......... 7

STANDARD OF REVIEW ...................................................................................... 7

ARGUMENT ......................................................................................................... 8

    I.    Plaintiffs Fail To State A Disparate Impact Claim. ............................. 8

        A.    Plaintiffs Fail To Allege A Facially Neutral Policy Or Practice. .............. 8

        B.    Plaintiffs Fail To Allege How The Challenged Rotation Practices Caused A Disparate Impact. .............................. 12

    II.    Plaintiffs' Disparate Impact Claim Fails For Lack Of Standing ........................ 13

    III.    Valles' And Gibbs' Disparate Impact Claims Are Time-Barred. ........................ 16

CONCLUSION ...................................................................................................... 17

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................7, 8

*Bacon v. Honda of Am. Mfg., Inc.*,
    370 F.3d 565 (6th Cir. 2004) ...........................................................................13

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007).............................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................7, 8

*Burgis v. N.Y.C. Dep't of Sanitation*,
    798 F.3d 63 (2d Cir. 2015)...............................................................................13

*Chandler v. Media*,
    2015 WL 5822263 (D.N.J. Oct. 1, 2015)........................................................16

*Chavarria v. Phila. Gas Works*,
    2020 WL 529892 (E.D. Pa. Feb. 3, 2020) ......................................................10

*Coe v. Yellow Freight Sys., Inc.*,
    646 F.2d 444 (10th Cir. 1981) .........................................................................14

*Fields v. American Airlines, Inc.*,
    2021 WL 4306021 (E.D. Pa. Sept. 22, 2021) ...............................................9, 10

*Finkelman v. Nat'l Football League*,
    877 F.3d 504 (3d Cir. 2017).............................................................................15

*Foxworth v. Pa. State Police*,
    228 F. App'x 151 (3d Cir. 2007) .....................................................................12

*Healey v. Southwood Psychiatric Hosp.*,
    78 F.3d 128 (3d Cir. 1996)...............................................................................8

*Horowitz v. AT&T Inc.*,
    2018 WL 1942525 (D.N.J. Apr. 25, 2018) ......................................................11

*Katz v. Tata Consultancy Services, Ltd.*,
    2023 WL 5125518 (D.N.J. Aug. 10, 2023) ...................................................10, 11

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Knox v. PPG Indus., Inc.*,
    2016 WL 279004 (W.D. Pa. Jan. 22, 2016)....................................................................12, 13

*Kovach v. Turner Dairy Farms, Inc.*,
    929 F. Supp. 2d 477 (W.D. Pa. 2013).....................................................................11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................13

*McCutchen v. Sunoco, Inc.*,
    2002 WL 1896586 (E.D. Pa. Aug. 16, 2002) ....................................................................13, 14

*McNeil v. Greyhound Lines, Inc.*,
    982 F. Supp. 2d 447 (E.D. Pa. 2013) ....................................................................13

*Neary v. Gruenberg*,
    730 F. App'x 7 (2d Cir. 2018) ....................................................................14

*Pajak v. Potter*,
    2009 WL 1883982 (D.N.J. June 30, 2009) ....................................................................17

*Phillips, et al. v. Wipro Ltd.*,
    No. 4:18-cv-00821 (S.D. Tex.) ....................................................................5

*In re PHP Healthcare Corp.*,
    128 F. App'x 839 (3d Cir. 2005) ....................................................................6

*Rauceo v. Phila. Gas Works*,
    2020 WL 550613 (E.D. Pa. Feb. 3, 2020) ....................................................................10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)....................................................................16

*Sztroin v. PennWest Indus. Truck, LLC*,
    2017 WL 4355575 (W.D. Pa. Oct. 2, 2017) ....................................................................10, 11

*Urban v. Bayer Corp. Pharm. Div.*,
    2006 WL 3289946 (D.N.J. Nov. 13, 2006) ....................................................................16

*Verney v. Dodaro*,
    872 F. Supp. 188 (M.D. Pa. 1995)....................................................................16

*Watson v. Fort Worth Bank & Trust*,
    487 U.S. 977 (1988)....................................................................8

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*White v. Smiths Detection, Inc.*,
    2013 WL 1845072 (D.N.J. Apr. 30, 2013) ..............................................................................13

Defendant Wipro Limited ("Wipro") respectfully submits this Memorandum of Law in Support of Its Motion for Partial Dismissal of Plaintiffs' Second Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiffs' Second Amended Complaint ("SAC") seeks to revive the Title VII disparate impact claim that this Court has already dismissed once. But Plaintiffs' re-pleaded disparate impact claim fares no better than their previous disparate impact claim—it is barred as a matter of law for multiple, independent reasons.

*First*, Plaintiffs' re-pleaded disparate impact claim does not cure the fatal deficiency that led the Court to dismiss Plaintiffs' previous disparate impact claim—Plaintiffs' allegations "sound in disparate treatment, as opposed to disparate impact." Dkt. 25 ("MTD Op.") at 16. To state a disparate impact claim, Plaintiffs must allege "a facially neutral policy or practice that, when applied, had a discriminatory impact on a protected group." *Id.* at 17. Plaintiffs fail to allege a facially neutral policy or practice. Plaintiffs' disparate impact claim is premised on an "automatic[]" "tenure-based rotation" practice in Wipro's Global Rotation Policy, which Plaintiffs claim "results in a disparate impact on non-South Asians and non-Indians." Dkt. 83 ("SAC") ¶¶ 24–25. But Plaintiffs' own allegations defeat any plausible inference that the alleged rotation policy is facially neutral—and instead, make clear that the alleged rotation policy is rooted in intentional discrimination in favor of South Asian and Indian employees.

*Second*, even if Plaintiffs could allege a cognizable disparate impact claim (and they cannot), their claim still fails for lack of standing. Plaintiffs have not alleged that they personally were injured by the alleged rotation policy they challenge in their disparate impact claim. Nor could they: the effective date of the Global Rotation Policy underlying Plaintiffs' claim is July 2023. The last date that any of the Named Plaintiffs were employed by Wipro was in 2020.

Plaintiffs necessarily cannot have been injured by a policy that was not in place when they were employees.

For these reasons, the disparate impact claim in Plaintiffs' SAC should be dismissed with prejudice.[1]

## BACKGROUND

I.    **The Parties and Summary of Allegations.**

Defendant Wipro is a multinational professional services company that provides information technology and consulting services to customers worldwide.  SAC ¶ 10.  Plaintiffs Gregory MacLean, Rick Valles, Ardeshir Pezeshki, James Gibbs, and Ronald Hemenway are former Wipro employees.  *See id.* ¶¶ 29, 33, 39, 41, 46, 51, 54, 59, 64, 68.  The last date of employment with Wipro of any of the named Plaintiffs was February 26, 2020.

***Gregory MacLean.***  MacLean, who is of "American national origin" and "Caucasian," was employed by Wipro in Southern California from May 2011 until February 2019.  SAC ¶¶ 3, 29, 30.  From May 2011 until December 2018, MacLean worked as a Software Analyst on a "project servicing BP Arco."  *Id.* ¶ 28.  After this project ended in December 2018, MacLean was placed on the "bench," meaning that he was placed in a "non-productive status" until he could obtain a position on another project.  *Id.* ¶¶ 16, 30.  Ultimately, MacLean failed to obtain a position on another project, and on February 25, 2019, Wipro terminated MacLean's employment.  *Id.* ¶ 33.

***Rick Valles.***  Valles, who is of "American national origin" and "Hispanic," was hired in 2011 and worked as a Systems Analyst on the BP Arco project.  SAC ¶¶ 4, 37.  When this project

---

[1] Even if Plaintiffs had standing (they do not) and could state a claim (they cannot), the disparate impact claims asserted by Gibbs and Valles are time-barred.  This Court has already held that "individual Title VII claims asserted by Gibbs and Valles are time barred."  MTD Op. at 2.  And although the SAC purports to assert a disparate impact claim "on behalf of all Plaintiffs" (SAC ¶ 91), Plaintiffs have since conceded that "Gibbs and Valles' Title VII disparate impact claims asserted are time-barred" (*see* Dkt. 92 at 2 n.1).

ended, Valles was placed on the bench.  *Id.* ¶ 39.  After multiple months on the "bench," Wipro terminated Valles' employment on January 31, 2015.  *Id.* ¶ 41.

*Ardeshir Pezeshki.*  Pezeshki, who is of "Iranian national origin" and "Caucasian," was hired by Wipro as a "Practice Director of business process digitization" on July 2, 2012.  SAC ¶¶ 5, 45–46.  On March 2, 2018, Pezeshki's project ended and "Wipro placed him on the bench." SAC ¶ 50.  Pezeshki failed to obtain a new project and Wipro terminated his employment on June 1, 2018.  *Id.* ¶ 50–51.

*James Gibbs.*  Gibbs, who is of "American national origin" and "Caucasian," was hired by Wipro in 2012 as a Global Client Partner serving Wipro's FedEx account.  SAC ¶¶ 6, 54.  Gibbs resigned from his employment at Wipro in September 2015.  *Id.* ¶ 59.

*Ronald Hemenway.*  Hemenway, who is also of "American national origin" and is "Caucasian," began working at Wipro as a Program Director in September 2019.  SAC ¶¶ 7, 64. Hemenway was "bench[ed]" in late November or early December 2019.  *Id.* ¶ 68.  He alleges that he actively sought a new position within Wipro, but was not selected for any positions, and his employment was terminated on February 26, 2020.  *Id.*

Plaintiffs allege that "Wipro operates under a general policy of discrimination in favor of South Asians and against individuals who are not South Asian and not Indian."  SAC ¶ 17. Collectively, Plaintiffs allege that Wipro explicitly prefers South Asians in employment decisions in at least four ways:

- By "seek[ing] to maximize" the number of "H-1B, L-1A, L-1B and B-1 visas" it secures "for South Asian and Indian workers located overseas who will then be used to staff U.S. positions," and giving "South Asian and Indian visa-ready individuals" preference "for open positions in the U.S.," SAC ¶¶ 18–20;

- By "giv[ing] preference to South Asian and Indian applicants located in the U.S.," *id.* ¶ 21;

- By "promot[ing]" South Asians and Indians at disproportionately high rates compared to non-South Asians and non-Indians" because of "its discriminatory preference for South Asians and Indians," and regularly awarding South Asians and Indians "higher appraisal scores," *id.* ¶¶ 22–23; and

- By "relegat[ing] to the bench" and terminating "non-South Asians and non-Indians at disproportionately high rates, compared to South Asians and Indians," *id.* ¶ 23.

Of particular relevance to this motion, Plaintiffs also allege in their SAC that Wipro has a "Global Rotation Policy" that purportedly has "a disparate impact on non-South Asian and non-Indian applicants and employees." SAC ¶ 24. Specifically, Plaintiffs challenge a portion of the Global Rotation Policy that provides for "a tenure-based rotation policy that is applicable only to 'offshore associates.'" *Id.*; *see* Dkt. 83-1 ("SAC, Ex. 1") at 380.[2] Under this "tenure-based rotation policy," "[a]ll tenure eligible Visa holders currently offshore would be automatically included in the rotation activity." SAC ¶ 24. Plaintiffs allege that "[i]n accordance with" this policy, "visa employees are rotated from offshore into U.S. positions, and locally-hired employees are rotated out of U.S. roles to make positions available for visa employees or are otherwise not considered for positions (if already on the bench)." *Id*. ¶ 25. The "vast majority of employees for whom Wipro seeks visas are from India." *Id.* As a result, Plaintiffs allege, the Global Rotation Policy "results in visa employees—who are predominantly South Asian and Indian—being rotated into U.S. roles, and locally-hired U.S. employees—who are predominantly non-South Asian and non-Indian—being rotated out of roles (or not considered for roles if already benched), benched, and ultimately terminated for being on the bench for too long." *Id.*

Plaintiffs further allege that "Wipro's U.S. workforce reflects the result of its discriminatory scheme." SAC ¶ 26. "[A]t least 80% (or more) of Wipro's United States-based

---

[2] When citing specific pages of the Global Rotation Policy attached as Exhibit 1 to the SAC, Wipro cites the last three digits of the Bates number in the bottom right-hand corner of the page.

workforce is South Asian and Indian, as is, the vast majority of its managerial and supervisory-level staff." *Id.*

Plaintiffs seek to represent a putative class of "[a]ll non-South Asians and non-Indians who (1) were employed by Wipro, and met the criteria for a promotion, but were not promoted, and/or (2) were employed by Wipro and involuntarily terminated." SAC ¶ 71. Plaintiffs raise three claims on behalf of themselves and the putative class: (1) disparate treatment on the basis of race in violation of Section 1981; (2) disparate treatment on the basis of race and national origin in violation of Title VII; and (3) disparate impact on the basis of race and national origin in violation of Title VII. *See id.* ¶¶ 80–93.

## II.    Relevant Procedural History.

### A. Plaintiffs Filed This Lawsuit In March 2020, Alleging Disparate Impact And Disparate Treatment.

Plaintiffs filed this lawsuit on March 30, 2020. Dkt. 1. On June 1, 2020, Plaintiffs amended their complaint to add a Title VII claim on behalf of Hemenway, who received a right-to-sue letter from the EEOC on May 19, 2020. Plaintiffs' First Amended Complaint ("FAC") included claims for disparate treatment in violation of Title VII and Section 1981 based on alleged failure to hire and promote Plaintiffs, and the theory that Plaintiffs were fired because they were neither South Asian nor Indian. Dkt. 6 ("FAC") ¶¶ 79–88. Plaintiffs also brought a disparate impact claim. *Id.* ¶¶ 89–92. Plaintiffs asserted these claims on behalf of the same putative nationwide class of Wipro employees and applicants at issue in a previously filed (and then-pending) putative class action in the U.S. District Court for the Southern District of Texas, *Phillips, et al. v. Wipro Ltd.*, No. 4:18-cv-00821 (S.D. Tex.). *Compare* SAC ¶ 71, *with* Dkt. 22-3 (*Phillips* complaint) ¶ 47.

On June 11, 2020, Wipro moved to dismiss the FAC or, in the alternative, to stay and to strike class allegations. Dkt. 11. On December 4, 2020, the Court granted Wipro's motion to stay,

staying Plaintiffs' claims pending a class certification decision in *Phillips*.  *See* Dkt. 17.  After the *Phillips* court issued an order denying plaintiffs motion for class certification on March 14, 2022, *see Phillips*, No. 4:18-cv-00821, Dkt. 253, this Court lifted the stay of this action and ordered a briefing schedule for Wipro's renewed motion to dismiss, *see* Dkt. 21.

**B.  In September 2022, This Court Dismissed Plaintiffs' Disparate Impact Claim.**

On May 10, 2022, Wipro filed a renewed motion to dismiss Plaintiffs' FAC or, in the alternative, to strike class allegations.  Dkt. 22.  Wipro moved to dismiss the FAC on the grounds that Plaintiffs failed to state a claim as to all causes of action, that Plaintiffs' claims were time-barred, and that Plaintiffs lacked standing.  Dkt. 22-1 at 1-2.

On September 29, 2022, the Court granted in part and denied in part Wipro's renewed motion to dismiss.  The Court held that "Plaintiffs fail[ed] to state a claim for disparate impact" because they did not allege "a <u>facially neutral</u> employment practice" required for a disparate impact claim.  MTD Op. at 16, 22 (emphasis in original).  The Court explained that "Plaintiffs have identified four allegedly discriminatory employment practices, but none of those practices are facially neutral.  Rather, the allegations suggest that these practices have been enacted and enforced by Wipro to carry out the company's preference for South Asian and Indian workers" and therefore "sound[ed] more in disparate treatment."  *Id.* at 22.  In addition, the Court held that the Title VII disparate treatment claims asserted by Gibbs and Valles were "time barred."  *Id.* at 29.  Accordingly, the Court dismissed Plaintiffs' Title VII disparate impact claim and Gibbs's and Valles's individual Title VII disparate treatment claims with prejudice.[3]

---

[3] The Court's Order did not specify that Plaintiffs' disparate impact claims and Valles's and Gibbs's Title VII disparate treatment claims were dismissed without prejudice.  As a result, the Court's dismissal of these claims is "presumed to be made with prejudice."  *In re PHP Healthcare Corp.*, 128 F. App'x 839, 842 (3d Cir. 2005) ("[I]n the absence of a clear statement to the contrary, a dismissal pursuant to Rule 12(b)(6) should be presumed to be made with prejudice.").

**C.  In December 2024, Plaintiffs Filed Their Second Amended Complaint, Re-Pleading Their Disparate Impact Claim.**

On July 26, 2024, Plaintiffs moved for leave to amend the FAC to add two claims: (1) a citizenship discrimination claim under Section 1981; and (2) a disparate impact claim under Title VII based on the 2023 version of Wipro's Global Rotation Policy, which had been produced in discovery.  *See* Dkt. 68 at 6.  On December 10, 2024, Magistrate Judge J. Brendan Day granted Plaintiffs leave to amend to re-plead a disparate impact claim under Title VII and denied their request to add a citizenship discrimination claim under Section 1981.  *See* Dkt. 81.  Magistrate Judge Day did not rule on the merits of the disparate impact claim, and "expresse[d] no view on the ultimate resolution of a future motion to dismiss the disparate impact claim."  *Id*. at 21.

On December 17, 2024, Plaintiffs filed the SAC.  Dkt. 83.  On January 14, 2025, Wipro filed a pre-motion letter concerning its anticipated motion to dismiss the disparate impact claim in the SAC.  Plaintiffs responded to Wipro's pre-motion letter on January 21, 2025.  Dkt. 92.  On January 23, 2025, the Court granted Wipro leave to file a motion to dismiss.  Dkt. 93.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although the Court "must accept all factual allegations in [the] complaint as true," it need not accept as true "unsupported conclusions and unwarranted inferences . . . or a legal conclusion couched as a factual allegation."  *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).  Such allegations, devoid of further factual enhancement, cannot withstand a motion to dismiss.  *See*

*Twombly*, 550 U.S. at 555.  Further, a plaintiff must do more than "plea[d] facts that are merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 678.  He is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  If the plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## ARGUMENT

I.    **Plaintiffs Fail To State A Disparate Impact Claim.**

To survive a motion to dismiss, a plaintiff asserting a disparate impact claim under Title VII must allege "a facially neutral policy affects members of a protected class in a significantly discriminatory manner." *Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 131 (3d Cir. 1996). "The plaintiff must begin by identifying" a specific facially neutral employment practice, and then "offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988).  Plaintiffs fail to allege sufficient facts to state a plausible disparate impact claim under this standard. *First*, Plaintiffs fail to allege a facially neutral employment practice; instead, their allegations sound in intentional discrimination. *Second*, even if Plaintiffs could identify a facially neutral employment practice (they cannot), they fail to plausibly allege any disparate impact resulting from such a policy or practice.

### A.  Plaintiffs Fail To Allege A Facially Neutral Policy Or Practice.

The SAC fails to state a disparate impact claim for the same reason identified by this Court when it dismissed Plaintiffs' disparate impact claim in their FAC: Plaintiffs' allegations "sound in disparate treatment, as opposed to disparate impact."  MTD Op. at 16.  Plaintiffs claim that the Global Rotation Policy, through its "preference for visa workers," has a disparate impact on non-

South Asian and non-Indian employees.  SAC ¶ 25.[4]  Plaintiffs allege that the Global Rotation

Policy "results in visa employees—who are predominantly South Asian and Indian—being rotated

into U.S. roles, and locally-hired U.S. employees—who are predominantly non-South Asian and

non-Indian—being rotated out of roles . . . benched, and ultimately terminated."  *Id.*

Plaintiffs claim that the rotation policy's "preference for visa workers" is "race and national

origin-neutral" because "visas can be used to bring employees from almost every country to the

U.S. for work."  SAC ¶ 25.  But Plaintiffs' own factual allegations directly contradict their claim

of facial neutrality.  Plaintiffs allege that "[t]o *fulfill its employment preference for South Asians*

*and Indians*, Wipro seeks to maximize the number of visas it receives each year" and provides

"[a]ll, or substantially all" of those visas to South Asian and Indian individuals.  *Id.* ¶¶ 19–20

(emphasis added).  Plaintiffs further allege that "Wipro's *South Asian and Indian visa-ready*

*individuals are given preference for*" "open positions in the U.S."  *Id.* ¶ 20 (emphasis added); *see*

*also id.* ¶ 23 ("Additionally, *because of Wipro's preference for filling positions with South Asian*

*and Indian visa workers* . . . non-South Asian and non-Indians are disproportionately relegated to

the bench and disproportionately unable to locate new assignments." (emphasis added)).

Thus, Plaintiffs' disparate impact claim suffers from the same fatal defect as their previous

claim in the FAC:  Plaintiffs allege that Wipro "intentionally secures visas for South Asian and

Indian individuals" and then rotates "visa workers to staff U.S. positions," which amounts to

---

[4]  Plaintiffs acknowledge the Global Rotation Policy is "the heart of [their] disparate impact claim." Dkt. 92 at 1.  To the extent Plaintiffs allege that *other* "policies and practices related to hiring, promotion, and termination of individuals" have a disparate impact (SAC ¶ 92), those allegations fail to identify a "specific employment practice" and are too "conclusory" to state a claim, *Fields v. American Airlines, Inc.*, 2021 WL 4306021, at *13–14 (E.D. Pa. Sept. 22, 2021).  Further, the only such policies and practices alleged in the SAC are the same purportedly discriminatory hiring, promotion, or termination practices that were alleged in the FAC—which this Court has already held are not facially neutral and "sound in disparate treatment, rather than disparate impact."  MTD Op. at 16; *compare* FAC ¶¶ 17–23, *with* SAC ¶¶ 17–23.

"deliberate[] discriminat[ion] against non-South Asians and non-Indians."  MTD Op. at 20. Plaintiffs' theory is *not* that the rotation policy is facially neutral and has a harsher impact on non-South Asian or non-Indian individuals.  Instead, Plaintiffs' claim is premised on Wipro's alleged implementation of a rotation policy "in a deliberately discriminatory fashion" to prioritize South Asian and Indian visa employees by "rotat[ing]" those employees "from offshore into U.S. positions" (SAC ¶¶ 24–25).[5]  *Rauceo v. Phila. Gas Works*, 2020 WL 550613, at *3 (E.D. Pa. Feb. 3, 2020).  As a result, the challenged rotation policy "is one of *intentional* discrimination—not the result of adverse effects from a facially neutral policy."  *Id.*  Because the challenged rotation policy "sound[s] in disparate treatment," it cannot serve as the basis for a disparate impact claim.  MTD Op. at 16; *see, e.g.*, *Fields*, 2021 WL 4306021, at *13 (dismissing Title VII disparate impact claim because "Plaintiffs' allegations suggest facially discriminatory treatment by American Airlines' managers, which does not support a claim for disparate *impact*"); *Chavarria v. Phila. Gas Works*, 2020 WL 529892, at *3 (E.D. Pa. Feb. 3, 2020) (dismissing Title VII disparate impact claim where plaintiff alleged that defendant "purportedly applied" the challenged allegedly facially neutral policy "in a deliberately discriminatory fashion").

Courts have dismissed analogous disparate impact claims for precisely this reason.  For example, the plaintiff in *Katz v. Tata Consultancy Services, Ltd.*, 2023 WL 5125518 (D.N.J. Aug. 10, 2023) asserted a disparate impact claim based on Tata Consultancy Services' "benching, hiring, and termination policies to maximize visa-holders, who [plaintiff] alleges are 'almost

---

[5] Plaintiffs argue the alleged rotation policy has a "non-discriminatory purpose" based on their allegations concerning the "stated purpose" of the policy (SAC ¶ 24).  *See* Dkt. 92 at 2. But the "purported existence of a facially neutral policy" is "undermined by the more specific allegations" described *supra*—which "make clear that the policy of which Plaintiff[s] complain[] is one of intentional discrimination."  *Sztroin v. PennWest Indus. Truck, LLC*, 2017 WL 4355575, at *7–8 (W.D. Pa. Oct. 2, 2017).

exclusively South Asian,'" and defendant's "prioritiz[ation of] those visa-holders for TCS positions." *Id.* at *6. The court dismissed the disparate impact claim on the grounds that the challenged policies "are not facially neutral policies." *Id.* The court reasoned that because the plaintiff alleged that the defendant "implements these policies to further a preference for South Asians and Indians," plaintiff's allegations "sound in disparate treatment rather than disparate impact." *Id.* The same is true here. Plaintiffs allege that Wipro's rotation policy prioritizes visa holders for positions in the United States—by "rotat[ing]" visa employees who are "predominantly South Asian and Indian" from "offshore into U.S. positions"—to further Wipro's alleged "preference" for South Asian and Indian employees. SAC ¶¶ 19–20, 25. These allegations make clear that "the policy of which Plaintiff[s] complain[] was one of intentional discrimination"—not a "facially neutral policy." *Sztroin*, 2017 WL 4355575, at *7–8; *see Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *22 (D.N.J. Apr. 25, 2018) (concluding that "Plaintiffs fail to identify a specific, *facially neutral policy*" where plaintiffs "plead Defendants implemented an intentionally bias[ed] . . . scheme").

In their pre-motion letter, Plaintiffs argue that "disparate impact and disparate treatment" can be asserted as "alternative theories of liability based on the same set of facts." Dkt. 92 at 3. But even if disparate treatment and disparate impact may be plead in the alternative, a plaintiff must plausibly allege facts to "satisfy the[] respective elements" of each type of claim "to survive a motion to dismiss for failure to state a claim"—which Plaintiffs fail to do. *Katz*, 2023 WL 5125518, at *6; *see also Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 500 (W.D. Pa. 2013) (while pleading in the alternative is permitted, "what is plead alternatively must still have a plausible basis grounded in fact"). Plaintiffs' failure to allege a facially neutral policy alone compels dismissal of their disparate impact claim.

**B. Plaintiffs Fail To Allege How The Challenged Rotation Practices Caused A Disparate Impact.**

Even if Plaintiffs' allegations did sound in disparate impact (they do not), Plaintiffs fail to connect the dots to show how the alleged rotation policy caused disparities in Wipro's workforce, let alone how that policy specifically impacted them. Plaintiffs allege that "at least 80% (or more) of Wipro's United States-based workforce is South Asian and Indian, as is, the vast majority of its managerial and supervisory-level staff." SAC ¶ 26. However, it is "not enough" for Plaintiffs to merely show that "there are statistical disparities in the employer's workforce"; Plaintiffs must instead allege causation. *Foxworth v. Pa. State Police*, 228 F. App'x 151, 156 (3d Cir. 2007). Plaintiffs have failed to do so.

Plaintiffs allege only that the purported disparity in Wipro's workforce "*reflects*"—rather than was *caused* by—the alleged facially neutral rotation policy. SAC ¶ 26 (emphasis added). Nor do Plaintiffs distinguish between alleged practices that are facially neutral and those that are not. *Id.* As a result, any claim that the purported disparity in Wipro's workforce was caused by the alleged facially neutral rotation policy, as opposed to the alleged intentionally discriminatory practices, is entirely speculative. This falls far short of Plaintiffs' burden of alleging causation. *See Hopkins*, 2018 WL 1243985, at *7 (granting motion to dismiss Title VII disparate impact claim and reasoning that "the 'statistics' provided by Plaintiff are insufficient to support his assertion that disparate impact discrimination exists"); *Knox v. PPG Indus., Inc.*, 2016 WL 279004, at *7 (W.D. Pa. Jan. 22, 2016) (granting motion to dismiss Title VII disparate impact claim and reasoning plaintiff's allegation that "only 20 percent of the 70 to 80 employees . . . were women is not enough to save her claim" because "Plaintiff has not attempted to explain how any of the

challenged employment practices . . . have any connection to the number of women employed").[6]

Further, Plaintiffs' 80% statistic—even if taken as true without any support of information about the source of the calculation or the determination of who qualifies as "South Asian and Indian"—is "totally meaningless" without some showing that makes other plausible non-discriminatory explanations for the racial make up of the workforce unlikely. *Knox*, 2016 WL 279004, at \*7 (alleged statistical disparity in workforce, "standing alone," is insufficient to state disparate impact claim as plaintiff "has not alleged any facts about the number of qualified potential applicants in the relevant labor market"); *see also Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015) (similar). Plaintiffs thus fail to allege a facially neutral employment practice that caused a disparate impact, and their Title VII disparate impact claim should be dismissed.

## II.    Plaintiffs' Disparate Impact Claim Fails For Lack Of Standing.

Plaintiffs' disparate impact claim should also be dismissed for lack of standing. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To have standing to bring a disparate impact claim," a plaintiff must plead sufficient facts to show that he was injured "because of" the challenged employment policy that allegedly had a disparate impact. *McCutchen v. Sunoco, Inc.*, 2002 WL 1896586, at \*6 (E.D. Pa. Aug. 16, 2002), *aff'd*, 80 F. App'x 287 (3d Cir. 2003); *see also, e.g., Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 577 (6th Cir. 2004) (holding that a "plaintiff arguing a disparate impact theory must show that the challenged

---

[6] *See also, e.g., McNeil v. Greyhound Lines, Inc.*, 982 F. Supp. 2d 447, 451 (E.D. Pa. 2013) (dismissing disparate impact claim where plaintiff failed to allege a "causal connection" between alleged facially neutral policy and disparity); *White v. Smiths Detection, Inc.*, 2013 WL 1845072, at \*18 (D.N.J. Apr. 30, 2013) (denying leave to amend because proposed pleading "fails to explain with any particularity" how the challenged practice "itself caused the alleged disparate impact").

policy directly disadvantaged him in some fashion"); *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 451 (10th Cir. 1981) ("It is not sufficient for an individual plaintiff to show that the employer followed a discriminatory policy without also showing that plaintiff himself was injured.").

Plaintiffs cannot make this showing, as they fail to allege any facts demonstrating that they personally suffered any injury because of the Global Rotation Policy. To the contrary, the Global Rotation Policy's "Effective Date" is "July 2023" (SAC, Ex. 1 at 377)—which is ***years after*** Plaintiffs' employment at Wipro ended. Indeed, the last date any of the Named Plaintiffs were employed by Wipro was February 26, 2020 (SAC ¶¶ 33, 41, 51, 59, 68)—more than three years before the Effective Date of the Global Rotation Policy. Plaintiffs cannot have been injured by a rotation policy that "went into effect years after" their employment at Wipro ended. *Neary v. Gruenberg*, 730 F. App'x 7, 11 (2d Cir. 2018). Without injury, there can be no standing. *Id.* (dismissing disparate impact claim for lack of standing because the challenged policy "went into effect years after [plaintiff] applied for and was denied a job").

In their pre-motion letter, Plaintiffs argue they have standing to challenge the Global Rotation Policy because the "Revision History" of that policy "indicates that it has been in effect since November 1, 2012—well before Plaintiffs were terminated." Dkt. 92 at 3. But the Revision History of the policy merely states that 10 previous versions of the policy were in effect for various periods of time between November 2012 and July 2023. *See* SAC, Ex. 1 at 386–87 ("Revision History" identifying Versions 1.0, 1.1, 2.0, 3.0, 4.0, 5.0, 5.1, 5.2, 5.3, 5.4, and 5.5 of the policy). Further, the "Revision History" reflects that the policy was repeatedly revised, as there were "change[s]" in each version of the policy that pre-dated the July 2023 version attached to the SAC. *Id.* at 386–87. Plaintiffs' argument rests on the unexplained (and unpled) assumption—found nowhere in the SAC—that all ten of the previous versions of the Global Rotation Policy (Versions

1.0 through 5.4) were the same as the July 2023 version of the Global Rotation Policy (Version 5.5) relied upon in and attached to the SAC. But Plaintiffs' "mere assumption" cannot satisfy their burden "to prove [their] standing." *Finkelman v. Nat'l Football League*, 877 F.3d 504, 508 (3d Cir. 2017).

Plaintiffs do not allege *any* facts to support a plausible inference that the aspects of the July 2023 Global Rotation Policy that Plaintiffs now contend "result[] in a disparate impact on non-South Asians and non-Indians" were included in the earlier versions of the policy. SAC ¶ 25. It is Plaintiffs' burden to allege such facts, and they have failed to carry it. That alone requires dismissal of this claim for lack of standing.

Moreover, examination of the policy and SAC compels the conclusion that the reason Plaintiffs failed to plead such allegations is because the facts (as plead in the SAC and as reflected in Exhibit 1 thereto) do not support Plaintiffs' disparate impact claim. Plaintiffs' disparate impact claim is premised on the "tenure-based rotation policy that is applicable only to 'offshore associates,'" under which they allege "tenure eligible Visa holders currently offshore would be automatically included in the rotation activity." SAC ¶ 24. This "tenure-based potation policy" is set out in "Part 2" of the July 2023 Global Rotation Policy, which is titled "Tenure Based Rotation." *See* SAC, Ex. 1 at 380. However, the "Revision History" in the Global Rotation Policy states that this "Tenure Based Rotation" section of the policy was not added until July 7, 2023. *See id.* at 387. Specifically, the "Revision History" states that one of the "Reason[s] for Change" in the July 2023 version of the policy (Version 5.5) was to "[a]dd[] Part 2 to the policy on Tenure-based rotation." *Id.* None of the named Plaintiffs were employed at Wipro in July 2023 when the "Tenure Based Rotation" policy in "Part 2" was added to the policy and implemented. *See* SAC ¶¶ 33, 41, 51, 59, 68.

Plaintiffs necessarily could not have been injured by a "tenure-based rotation policy" that was implemented after their employment at Wipro ended (SAC ¶ 24)—which is a fatal deficiency that cannot be cured through amendment.[7]  As a result, Plaintiffs' disparate impact claim should be dismissed with prejudice for lack of standing.  *See, e.g.*, *Verney v. Dodaro*, 872 F. Supp. 188, 194 (M.D. Pa. 1995) (dismissing Title VII disparate impact claim and concluding that plaintiff lacks standing to challenge a "promotional policy" where "[plaintiff] has not suffered any injury through its application").

**III.    Valles' And Gibbs' Disparate Impact Claims Are Time-Barred.**

Even if Plaintiffs had standing and could state a disparate impact claim (which they do not), the disparate impact claims asserted by Gibbs and Valles still fail because they are time-barred.  Under Title VII, "[i]f a charge is not filed within 300 days of the alleged unlawful employment practice the claim is time-barred."  *Urban v. Bayer Corp. Pharm. Div.*, 2006 WL 3289946, at *3 (D.N.J. Nov. 13, 2006).  The "time period for filing a charge begins to run when [the] alleged unlawful employment practice occurs," *id.*, and the 300-day period for filing the administrative complaint is "treated as [a] statute[] of limitation[]," *Chandler v. Media*, 2015 WL 5822263, at *2 (D.N.J. Oct. 1, 2015).  Valles and Gibbs filed their EEOC charges in February 2020 (Dkts. 22-5, 22-7)—more than five years after their terminations from Wipro in 2015 and well after the 300-day limitations period expired.  SAC ¶¶ 41, 59.

This Court has already held that "the individual Title VII claims asserted by Gibbs and Valles are time barred."  MTD Op. at 29.  Nothing in the SAC "calls for a different ruling," and

---

[7] It is immaterial whether members of the putative class were injured by the Global Rotation Policy.  A plaintiff who seeks to represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016).  For the reasons explained *supra*, Plaintiffs fail to allege that they personally have been injured by the Global Rotation Policy.

the Court's determination that Gibbs's and Valles's Title VII claims are untimely "stands as [the] law of the case." *Pajak v. Potter*, 2009 WL 1883982, at *3 (D.N.J. June 30, 2009). Indeed, Plaintiffs conceded in their pre-motion letter that "Gibbs and Valles' Title VII disparate impact claims are time barred" (Dkt. 92 at 2 n.1). Accordingly, the disparate impact claims asserted by Gibbs and Valles should be dismissed as untimely.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' disparate impact claim in the SAC with prejudice.

Dated:   February 21, 2025                Respectfully submitted,

By: */s/ Seton Hartnett O'Brien*
Seton Hartnett O'Brien (SBN 247732017)
Grace E. Hart (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
Fax: (212) 351-4035
SOBrien@gibsondunn.com
GHart@gibsondunn.com

Greta B. Williams (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539
GBWilliams@gibsondunn.com

Heather L. Richardson (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: (213) 229-7000
Fax: (213) 229-7520
HRichardson@gibsondunn.com

*Attorneys for Defendant Wipro Limited*