NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY MACLEAN, RICK VALLES, ARDESHIR PEZESHKI, JAMES GIBBS, AND RONALD HEMENWAY, *individually and in their representative capacities*,<br><br>Plaintiffs,<br><br>v.<br><br>WIPRO LIMITED,<br><br>Defendant. | Civil Action No. 20-03414 (GC) (JBD)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Wipro Limited's Motion for Partial Dismissal of Plaintiffs'[1] Second Amended Complaint (SAC) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 94.) Plaintiffs opposed (ECF No. 95), and Defendant replied (ECF No. 96). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Motion to Dismiss is **GRANTED**.

**I.   BACKGROUND**[2]

The Court presumes the parties' familiarity with the underlying facts and procedural

---

[1]   Plaintiffs Gregory MacLean, Rick Valles, Ardeshir Pezeshki, James Gibbs, and Ronald Hemenway bring this action on behalf of themselves and a class of similarly situated individuals. (ECF No. 83.)

[2]   On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

history as set forth in the Court's September 29, 2022 Opinion. *See MacLean v. Wipro Limited*, Civ. No. 20-3414, 2022 WL 4550629 (D.N.J. Sept. 29, 2022). Plaintiffs are former employees of Wipro, an Indian company providing technology and consulting services. (ECF No. 83 ¶¶ 1-2.) They allege that Wipro engaged in a pattern or practice of intentional race and national origin discrimination in violation of Title VII and 42 U.S.C. § 1981. (*Id.*) Plaintiffs further allege that the company uses employment practices that have a disparate impact on non-South Asian and non-Indian individuals, in violation of Title VII. (*Id.*) The five Plaintiffs identify as either "Caucasian" or "Hispanic" and as being of "American national origin" or "Iranian national origin." (*Id.* ¶¶ 3-7.)

Plaintiffs allege that Wipro engaged in four distinct discriminatory employment practices that demonstrate a preference for South Asians and Indians. (*Id.* ¶¶ 17-26.) First, Wipro allegedly submitted "visa petitions for more positions than actually exist" in the United States.[3] (*Id.* ¶ 19.) Plaintiffs claim that although individuals already located in the United States, and non-South Asian foreign individuals who are "visa-ready," applied for open positions located in the United States, Wipro gives preference to South Asian and Indian visa-ready individuals for these positions. (*Id.* ¶ 20.) Similarly, "non-South Asian and non-Indian individuals are often displaced from their current positions in favor of South Asian and Indian visa-ready individuals." (*Id.*) This is because "[a]ll, or substantially all, of the individuals for whom Wipro secures visas are South Asian and Indian." (*Id.*)

Second, Plaintiffs allege that Wipro, both through its internal recruiting department and third-party recruiting companies, gives preference to South Asian and Indian applicants located in

---

[3] For example, the SAC alleges that although Defendant employs less than 15,000 individuals in the United States, Defendant received 5,968 new visas in 2015 and 6,831 new visas in 2016. (ECF No. 83 ¶ 19.)

the United States over non-South Asian and non-Indian applicants. (*Id.* ¶ 21.)

Third, Plaintiffs allege that "because of its discriminatory preference for South Asians and Indians, Wipro promotes South Asians and Indians at disproportionately high rates compared to non-South Asians and non-Indians." (*Id.* ¶ 22.) Critical to receiving a promotion, Wipro employees must receive a "favorable appraisal score" and "must be nominated for a promotion by their immediate manager and have that nomination approved by their manager's manager." (*Id.*) Plaintiffs claim that some non-South Asian and non-Indian employees never receive appraisals, and those that do are given lower scores compared to South Asian and Indian employees. (*Id.*)

Fourth, Plaintiffs allege that Wipro benches[4] and terminates non-South Asians and non-Indians at disproportionately higher rates compared to South Asians and Indians. (*Id.* ¶ 23.)

In addition to these alleged discriminatory employment practices, Plaintiffs assert that Wipro maintains a Global Rotation Policy (GRP)—a policy that permits employees to rotate to different positions in different countries—which has a disparate impact on non-South Asian and non-Indian applicants and employees. (*Id.* ¶ 24.) The GRP, which is applicable to both "offshore employees" located in India and employees hired locally in the United States, has a stated purpose of "ensuring that more and more associates have the option to get exposed to new customers, technologies, and [to] build their careers and experience." (*Id.*) According to the GRP, "employees who meet minimum tenure guidelines are encouraged to apply to open positions matching their skill set on Wipro's online portal that they can be rotated into." (*Id.*) Within the

---

[4] According to the SAC, "[o]nce a position servicing a client comes to an end (or if an employee is removed from a position), employees are placed in a non-productive status referred to as being on the 'bench.'" (ECF No. 83 ¶ 16.) Moreover, "[o]nce on the bench, employees must again seek new positions within Wipro, going through an application and interview process, just as external applicants must." (*Id.*)

GRP is a tenure-based rotation policy that is applicable only to "offshore associates,"[5] where "[a]ll tenure eligible Visa holders currently offshore would be automatically included in the rotation activity" and there "would be no deferrals allowed for such associates, to encourage movements of Visa Holders from offshore to onsite assignments." (*Id.*)  Deferrals are only permitted if an employee is deemed "critical" for "a project or account offshore." (*Id.*)  A deferral may be exercised only once, "after which the employee . . . become[s] part of the rotation process by default, without any possibility of further exclusion." (*Id.*)

As alleged in the SAC, "visa employees are rotated from offshore into U.S. positions, and locally-hired employees are rotated out of U.S. roles to make positions available for visa employees or are otherwise not considered for positions (if already on the bench)." (*Id.* ¶ 25.) Further, "[i]f an open position is not immediately available for the local employee rotated out of his or her role, that employee is placed on the bench and is at risk of termination if he or she remains on the bench for too long," and "[t]he same is true for local employees already benched." (*Id.*) Because the "majority of Wipro's workforce resides in [India]," the GRP "results in visa employees—who are predominantly South Asian and Indian—being rotated into U.S. roles, and locally-hired U.S. employees—who are predominantly non-South Asian and non-Indian—being rotated out of roles (or not considered for roles if already benched), benched, and ultimately terminated for being on the bench" too long. (*Id.*)

Plaintiffs also allege that "Wipro's U.S. workforce reflects the result of its discriminatory scheme." (*Id.* ¶ 26.) Specifically, "about 12% of the U.S. IT industry is South Asian, at least 80% (or more) of Wipro's United States-based workforce is South Asian and Indian, as is[] the vast

---

[5] "Offshore associates" refers to employees from countries outsides the United States. (ECF No. 83 ¶ 24.)

majority of its managerial and supervisory-level staff." (*Id.*)

On September 29, 2022, the Court granted in part and denied in part Wipro's motion to dismiss the First Amended Complaint (FAC). *MacLean*, 2022 WL 4550629, at *1. The Court dismissed Plaintiffs' disparate impact claim because the FAC failed to identify a facially neutral employment practice. (*Id.*) The Court also dismissed Plaintiffs Gibbs and Valles' disparate treatment claims as time barred. (*Id.*) The disparate treatment claims on behalf of the remaining Plaintiffs (MacLean, Pezeshki, and Hemenway) were permitted to proceed.[6] (*Id.*)

After the discovery process began, Plaintiffs filed a Motion for Leave to file the SAC. (ECF No. 67.) On December 10, 2024, the Magistrate Judge granted in part and denied in part Plaintiffs' Motion. (ECF No. 81.) Specifically, Plaintiffs' request to add a claim for disparate impact under Title VII was granted. (*Id.* at 21.[7]) Plaintiffs' Motion was denied in all other respects. (*Id.*) On December 17, 2024, Plaintiffs filed the SAC, alleging disparate treatment in violation of 42 U.S.C. § 1981 and Title VII (Counts I and II) and disparate impact, on the basis of race and national origin, in violation of Title VII (Count III).[8] (ECF No. 83.) Wipro's Motion to Dismiss followed. (ECF No. 94.) Wipro only challenges Plaintiffs' disparate impact claim.[9] (*Id.*)

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether

---

[6] This matter was assigned to the Undersigned on January 17, 2023. (ECF No. 38.)

[7] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[8] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

[9] The Court notes that Plaintiffs' disparate impact claim incorporates intentional discrimination allegations (*i.e.*, disparate treatment allegations) by reference. (*See* ECF No. 83 ¶ 90.)

5

the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III. DISCUSSION

Wipro provides two arguments for why Plaintiffs' disparate impact claim should be dismissed: (1) Plaintiffs fail to identify a facially neutral policy or practice; and (2) to the extent Plaintiffs do identify a facially neutral policy or practice, Plaintiffs do not have standing to bring

a disparate impact claim. (ECF No. 94-1 at 13-21; ECF No. 96.) In response, Plaintiffs assert that the GRP is a facially neutral policy or practice that gives rise to a disparate impact claim, and that they have standing to bring such a claim. (ECF No. 95 at 13-28.)

It is well established that "Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin." *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1543 (2025). Title VII "prohibits both intentional discrimination and 'disparate impact' discrimination, i.e., 'employment practices adopted without a deliberately discriminatory motive, [which] may in operation be functionally equivalent to intentional discrimination.'" *NAACP v. N. Hudson Reg'l Fire and Rescue*, 742 F. Supp. 2d 501, 510 (D.N.J. 2010), *aff'd*, 665 F.3d 464 (3d Cir. 2011) (quoting *Newark Branch, NAACP v. City of Bayonne*, 134 F.3d 113, 121 (3d Cir. 1998)).

As the United States Court of Appeals for the Third Circuit has recognized, "[d]isparate-impact litigation proceeds in three steps." *NAACP*, 665 F.3d at 476; *see Ricci v. DeStefano*, 557 U.S. 557, 578 (2009). First, "a plaintiff must establish a prima facie case by demonstrating that application of a facially neutral standard has caused a significantly discriminatory hiring pattern." *NAACP*, 665 F.3d at 476 (citation modified). Second, an "employer may defend against a prima facie showing of disparate impact only by demonstrating that the challenged practice is 'job related for the position in question and consistent with business necessity.'" *Id.* at 477 (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i)). Third, "a plaintiff can overcome an employer's business-necessity defense by showing that alternative practices would have less discriminatory effects while ensuring that candidates are duly qualified." *Id.*

As to the first step, "[a] policy is facially neutral for purposes of Title VII where the policy does not discriminate on the basis of race, color, religion, sex, or national origin on its face, but

7

nevertheless causes a significant discriminatory hiring pattern." *Katz v. Tata Consultancy Servs., Ltd.*, Civ. No. 22-07069, 2023 WL 5125518, at *4 (D.N.J. Aug. 10, 2023). Because "[t]he evidence in these disparate impact cases usually focuses on statistical disparities," a "comparison between the racial composition of those qualified persons in the relevant labor market and that of those in the jobs at issue typically forms the proper basis for the initial inquiry in a disparate impact case." *Newark Branch, NAACP v. Town of Harrison, N.J.*, 940 F.2d 792, 798 (3d Cir. 1991) (citation modified). Importantly, "[e]ven when a facially neutral policy is identified, allegations that the policy was applied in a deliberately discriminatory way prevents the policy from serving as the basis for a disparate impact claim." *Katz*, 2023 WL 5125518, at *4.

For the same reasons stated in the Court's September 29, 2022 Opinion, the Court finds that Plaintiffs have failed to state a claim for disparate impact because their claims "sound in disparate treatment, as opposed to disparate impact." *MacLean*, 2022 WL 4550629, at *8. Here, Plaintiffs assert that their new allegations regarding the GRP cure the deficiencies previously identified by the Court. The Court disagrees.

The SAC makes clear that while the GRP is "applicable to both offshore employees . . . and employees who are hired locally," it specifically includes a "tenure-based rotation policy that is applicable only to 'offshore associates,' where '[a]ll tenure eligible Visa holders currently offshore would be automatically included in the rotation activity.'" (ECF No. 83 ¶ 24.) It appears that this automatic tenure-based rotation component of the GRP does not apply to employees hired locally. (*Id.*; *see* ECF No. 83-1 at 5.) Importantly, the SAC asserts that "[w]hile visas can be used to bring employees from almost every country to the U.S. for work—and a preference for visa workers is therefore race and national origin-neutral—the vast majority of employees for whom Wipro seeks a visa are from India." (*Id.* ¶ 25.) Accordingly, the GRP results in "employees []

8

rotated from offshore into U.S. positions, and locally-hired employees [] rotated out of U.S. roles to make positions available for visa employees," and "[i]f an open position is not immediately available for the local employee rotated out of his or her role, that employee is placed on the bench and is at risk of termination if he or she remains on the bench for too long"; this also applies to employees already benched. (*Id.*)

These allegations—coupled with the extensive allegations that Wipro has an "employment preference for South Asians and Indians" and intentionally discriminates against non-South Asians and non-Indians, (*id.* ¶¶ 1, 17-25, 90-93)—fail to state a disparate impact claim because the allegations sound in disparate treatment as opposed to disparate impact, (*id.* ¶ 24-25). *See Katz*, 2023 WL 5125518, at *4 (finding that alleged policy of prioritizing non-visa holders, terminating employees who remain on bench too long, only promoting individuals who have served a set number of years and achieved high performance scores, and allowing personnel in India to review performance score, did not constitute a facially neutral policy); *Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 131 (3d Cir. 1996) (finding that the defendant "us[ing] sex as an explicit factor in assigning its staff to the various shifts, and [that the plaintiff] was assigned to the night shift because of her sex," the defendant's staffing policy was "facially discriminatory, rather than facially neutral"); *Sztroin v. PennWest Indus. Truck, LLC*, Civ. No. 17-665, 2017 WL 4355575, at *8 (W.D. Pa. Oct. 2, 2017) (noting that "[t]he purported existence of a facially neutral policy is also undermined by the more specific allegations in [the plaintiff's] [c]omplaint which are incorporated by reference into the disparate impact claim and make clear that the policy of which [the] [p]laintiff complains was one of intentional discrimination against women").

To the extent the GRP can be interpreted as a facially neutral policy or practice, it is clear from the allegations in the SAC that the GRP is being "applied in a deliberately discriminatory

9

way [that] prevents the policy from serving as the basis for a disparate impact claim." *Katz*, 2023 WL 5125518, at *4, 6 (noting that the policy was applied with a preference towards South Asians and Indians); *see Rauceo v. Phila. Gas Works*, Civ. No. 19-4279, 2020 WL 550613, at *3 (E.D. Pa. Feb. 3, 2020); *Chavarria v. Phila. Gas Works*, Civ. No. 19-4428, 2020 WL 529892, at *3 (E.D. Pa. Feb. 3, 2020) (finding that the plaintiff failed to allege a disparate impact claim because the defendant's "no electronics policy" was applied in a "deliberately discriminatory fashion" against black and brown employees).

Therefore, Plaintiffs' disparate impact claim in the SAC (Count 3) is dismissed with prejudice as any further amendment would be futile. *See Sexton v. N.J. Dep't of Corr.*, Civ. No. 21-20404, 2024 WL 4615763, at *19 (D.N.J. Oct. 30, 2024), *aff'd*, No. 24-3118, 2025 WL 1482788, at *3 (3d Cir. May 23, 2025) (dismissing claims with prejudice when any further amendment would be futile).

## IV.  CONCLUSION

For the reasons stated above, and for other good cause shown, Defendant's Motion to Dismiss (ECF No. 94) is **GRANTED**.

Dated: June 30, 2025

*[signature]*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE